CHARLES H. CRAWFORD *v.* WARDEN
(10925)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued December 10, 1982—decision released March 1, 1983

*G. Douglas Nash,* public defender, with whom, on the brief, was *Ellen B. Lubell,* public defender, for the appellant-cross appellee (plaintiff).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Linda K. Lager,* assistant state's attorney, for the appellee-cross appellant (defendant).

GRILLO, J. In *Sandstrom v. Montana,* 442 U.S. 510, 524, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), the United States Supreme Court held that in a case where intent is an element of the crime charged, a jury instruction which creates a conclusive or burden-shifting presumption relative to that issue violates due process of law as guaranteed by the fourteenth amendment. This appeal from the judgment of the trial court denying a petition for

a writ of habeas corpus addresses the following issues with respect to that decision: (1) whether the *Sandstrom* principle is entitled to full retroactive effect; (2) whether the *Sandstrom* principle was violated by the trial court in its instructions to the jury.

The facts are not in dispute. The plaintiff, Charles Crawford, was indicted for murder by a grand jury on January 28, 1974. At the trial to a jury, the plaintiff did not contest the fact that he had shot and killed the victim, but based his defense on a claim that his voluntary intoxication from alcohol and drug intake prior to the shooting resulted in his incapacity to form the specific intent necessary for a conviction of murder. After presentation of the evidence, the trial court charged the jury, inter alia, as follows: "Now intent is a mental process. A person's intention may be inferred from his conduct. Every person is presumed to intend the natural and necessary consequences of his acts." On October 8, 1974, a verdict of guilty was returned by the jury. The plaintiff was sentenced to a term of imprisonment of not less than twenty-two years nor more than life on October 31, 1974.

The plaintiff appealed his conviction to this court, asserting error by the trial court in its charge to the jury relating to the burden of proof on the effect of voluntary intoxication. *State* v. *Crawford,* 172 Conn. 65, 67–68, 372 A.2d 154 (1976). This court, viewing the jury instructions in their entirety, underscored the fact that the trial court specifically charged the jury that the defendant had no burden of proof at all and that the state had the burden of proving the required intent. Id., 70.

We therefore concluded that "there was neither an erroneous charge nor even a reasonable possibility that the jury was misled." Id.

In 1979, approximately two and one-half years after this court's decision on the appeal taken by the plaintiff, the United States Supreme Court considered the constitutional validity of a state trial court jury instruction that " 'the law presumes that a person intends the ordinary consequences of his voluntary acts.' " *Sandstrom* v. *Montana,* supra, 512. Under the circumstances in which the challenged jury instruction was given, the court held that the charge violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as either a burden-shifting or a conclusive presumption. Id., 517–24; see *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978) (invalidating conclusive presumption); *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) (invalidating burden-shifting presumption).

Relying on the rule established in *Sandstrom,* the petitioner, on January 28, 1980, filed the present petition for a writ of habeas corpus. A stipulation of facts was entered into by the parties and submitted to the trial court. After hearing the parties' respective legal arguments, the trial court, *O'Donnell, J.,* concluded that while the principles of *Sandstrom* v. *Montana* must be applied retroactively, the challenged instruction, viewed in the context of the entire jury charge, could not be interpreted by a reasonable juror as either a conclusive or burden-shifting presumption. Accordingly, the court denied the petition for a writ of habeas

corpus, from which judgment the plaintiff has appealed. Subsequently, the state filed a cross appeal, asserting error by the trial court in its conclusion that the *Sandstrom* rule must be applied retroactively in the present case.

Our first consideration involves the question of whether we should apply the *Sandstrom* rule retroactively in the present case, taking into consideration the fear of the state that retroactive application under these circumstances would create an avalanche of collateral proceedings resulting in an overwhelmingly adverse impact on the administration of justice. In determining the scope of retroactivity, it is clear that " '[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.' " *Ivan V.* v. *City of New York*, 407 U.S. 203, 204, 92 S. Ct. 1951, 32 L. Ed. 2d 659 (1972). "It is true . . . that the question of whether the purpose of a new constitutional rule is to enhance the integrity of the factfinding process is a question of 'degree' . . . and when the degree to which the rule enhances the integrity of the factfinding process is sufficiently small, we have looked to questions of reliance by the State on the old rule and the impact of the new rule on the administration of justice in deciding whether the new rule is to be applied retroactively." *Hankerson* v. *North Caro-*

*lina,* 432 U.S. 233, 243, 97 S. Ct. 2339, 53 L. Ed. 2d 306 (1977); see *Stovall* v. *Denno,* 388 U.S. 293, 297, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). Guided by these precedents, we turn to a consideration of the purpose of the *Sandstrom* rule and its impact on the truth-finding function.

In *Hankerson* v. *North Carolina,* supra, the Supreme Court held that its decision in *Mullaney* v. *Wilbur,* supra, which struck down a jury instruction on the ground that it created a burden-shifting presumption relieving the state from establishing all elements of a criminal offense beyond a reasonable doubt, was entitled to full retroactive effect. The *Hankerson* court reached this determination by concluding that the effect of the burden-shifting presumption upon the reasonable doubt standard of proof substantially impaired the truth-finding function, thus raising serious questions about the accuracy of guilty verdicts in past trials. *Hankerson* v. *North Carolina,* supra, 243-44. Similarly, in *Sandstrom,* the court concluded that a jury instruction which creates either a conclusive or a burden-shifting presumption with respect to the intent element of a crime conflicts with the presumption of innocence to which every defendant is entitled and relieves the state from proving every element of the crime charged. *Sandstrom* v. *Montana,* supra, 522-25. Where either presumption is present, therefore, its existence casts substantial doubt upon the truth-finding function of a criminal trial, thus raising serious questions as to the accuracy of a guilty verdict. "Accordingly, any person convicted of a crime on the basis of the . . . instruction on intent challenged here is entitled to review of the conviction so obtained." *Harris* v. *Israel,* 515 F. Sup. 568, 572 (E.D. Wis. 1981).

Concededly, the *Sandstrom* decision did not create a per se constitutional rule with respect to every instruction of the type challenged here. The application of a particular rule of law may be constitutional under certain circumstances and unconstitutional under others. Compare *State* v. *Harrison,* 178 Conn. 689, 695–99, 425 A.2d 111 (1979) (invalidating instruction under *Sandstrom* rule) with *State* v. *Pina,* 186 Conn. 261, 264, 440 A.2d 967 (1982) (validating instruction challenged under *Sandstrom* rule.).[1] Indeed, as we have previously stated, "the rule of *Sandstrom* may not be oversimplified." *State* v. *Mason,* 186 Conn. 574, 582–83, 442 A.2d 1335 (1982). "It is not the use of the word 'presume' itself which renders an instruction invalid; rather it is the 'lack of qualifying instructions as to the legal effect of the presumption,' making it possible for a reasonable jury to interpret the presumption in an unconstitutional manner." Id., 583.

Turning to a review of the challenged instruction, considered in relation to the entire jury charge, we are unable to conclude that a *Sandstrom* violation exists. "On many occasions this court has found no error in instructions containing language

[1] Because of this case by case approach, we are not pursuaded that affording *Sandstrom* retroactivity will result in a devastatingly adverse impact on the administration of justice. In any event, we note that "[w]e do not release a criminal from jail because we like to do so, or because we think it wise to do so, but only because the government has offended constitutional principle in the conduct of his case." *Desist* v. *United Staes,* 394 U.S. 244, 258–59, 89 S. Ct. 1030, 22 L. Ed. 2d 248, reh. denied, 395 U.S. 931, 89 S. Ct. 1766, 23 L. Ed. 2d 251 (1969) (Harlan, J., dissenting). "In these circumstances, factors such as prior reliance by state and federal authorities and the effect on the administration of justice are subsumed by the interest in maintaining the integrity of the criminal factfinding process." *Harris* v. *Israel,* 515 F. Sup. 568, 572 (E.D. Wis. 1981).

similar to that invalidated in *Sandstrom* because the challenged instructions contained other language not present in the *Sandstrom* instructions which was sufficiently precise or elaborate to prevent the jury from applying the instructions in an unconstitutional manner." *State* v. *Mason,* supra, 583.

In its charge to the jury, the trial court instructed in a detailed and comprehensive manner concerning the presumption of innocence and the state's burden of proof, factors which remove the possibility that the jury shifted the burden of proof on the issue of intent to the plaintiff.[2] Further, the court's charge with respect to intent made it clear that the jurors were permitted but not required to infer criminal intent from the petitioner's conduct and

---

[2] The trial court instructed in pertinent part as follows:

"Now, the matter of presumption of innocence. Before I discuss the offense charged here, I should tell you what duty the State has in any criminal case.

"In this case, as in all criminal cases, it is the law that every man is presumed to be innocent until he is proved guilty. Thus, in the first instance, the defendant stands before you not as a guilty person, but as an innocent person until he is proved guilty under the law as I am about to explain it to you.

"The fact that the defendant has been arrested or incarcerated or is brought in and out of court by Sheriffs or had this indictment returned against him by the Grand Jury charging him with murder should have, in the first instance, no effect at all upon your mind. None of these things can be considered evidence of guilt. He is innocent until and unless the State has proved him guilty beyond a reasonable doubt of the offense charged here. This is the burden that rests upon the State in this case as in all criminal cases, the burden of proving to you that the defendant is guilty.

"In other words, the State must offer proof by sufficient evidence to overcome this presumption of innocence. The presumption of innocence requires that if evidence is offered which you believe and which is capable to two reasonable interpretations, one of which is consistent with innocence, it must be given that interpretation of innocence. This presumption of innocence is not, however, evidence in and of itself. It has no probative force, that is it does not prove anything. It simply means that the defendant stands here as an

thus the instruction did not possess the potential
for conclusiveness that was present in *Sandstrom*.[3]
See *Ulster County Court* v. *Allen*, 442 U.S. 140,
157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979); *State*
v. *Arroyo*, 180 Conn. 171, 176–79, 429 A.2d 457
(1980). This "elaborate and precise language . . .
[cures] the otherwise ambiguous use of [the word]
'presume . . . .' " *State* v. *Pina*, supra, 264. Thus

innocent man until it is found, if you do so find, that the State has
proved his by sufficient evidence to be guilty and has thus overthrown
his presumption of innocence.

"Now, the question of reasonable doubt and burden of proof. In
order to prove a defendant guilty in a criminal case, the State must
not only prove him guilty, but must prove him guilty beyond a
reasonable doubt. In a criminal case, the defendant has no burden
of proof except in certain situations not applicable to this case.
Hence, defendant has the right to rely upon the State's inability to
meet its burden of proof beyond a reasonable doubt.

"Every crime is made up of certain essential elements. What they
are in this case, I will explain as I proceed in this charge. But, for
the present, it is enough to say that before a jury can find a defend-
ant guilty of a crime, the State must have proved every essential
element of the crime beyond a reasonable doubt.

"Thus, as to the third element of the crime of murder, namely,
intent to cause the death of another person, even if you were to
find the defendant may have been intoxicated to some degree, if you
find that the State has proved the defendant was still capable of
forming the intent to cause the death of another person and that
he had such an intent at the time the crime was committed, and if
you find the State has proved all of the other essential elements of
the offense, you must find the defendant guilty of murder as charged.

"On the other hand, if you find that the State has failed to prove
at the time of the commission of the offense that the defendant was
capable of forming a specific intent mentioned and also has failed
to prove that he had such specific intent, you must find the defendant
not guilty of murder."

[3] Regarding intent, the trial court instructed as follows:

"The third element which the State must prove is that the person
causing the death of the person must have done so with intent to
cause the death. In other words, the State must prove beyond a
reasonable doubt that the accused shot Frosolone with the intent to
cause his death.

"Now, intent is a mental process. A person's intention may be
inferred from his conduct. Every person is presumed to intend the
natural and necessary consequences of his acts. It is often impos-

the challenged instruction, in view of the charge as a whole, could not be interpreted by a reasonable jury as either a burden-shifting or conclusive presumption.

There is no error.

In this opinion the other judges concurred.

sible and never necessary to prove criminal intent by direct evidence. Ordinarily, intent can be proved only by circumstantial evidence, as I have explained that term to you.

"What a person's purpose or intention has been is necessarily very largely a matter of inference. A person may stand and testify directly as to what his or her purpose or intention was, or was not, and that testimony you can believe or not, according to whether or not it warrants belief. But no one can be expected to come here and testify that he looked into another person's mind and saw therein a certain purpose or intention. The only way in which a jury can determine what a person's purpose or intention was at any given time, aside from that person's own testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and from those, infer what his purpose or intention was.

"To draw such an inference, is not only the privilege but it is also the duty of the jury provided, of course, the inference drawn is a reasonable one. In this case, therefore, it will be a part of your duty to draw all reasonable inferences from the conduct of the accused in the light of the surrounding circumstances as to what purpose or intention was in his mind at the time in question and considered all in the light of the entire testimony offered in this case by all the witnesses."