## State of Connecticut *v.* Mickey Williams
### (9864)

Peters, C. J., Healey, Shea, Santaniello and Ment, Js.

Argued December 10, 1985—decision released March 4, 1986

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Susan C. Marks,* special assistant state's attorney, with whom, on the brief, were *John M. Massameno,* assistant state's attorney, and *Richard D. Arconti,* former assistant state's attorney, for the appellee (state).

SHEA, J. After a trial to a jury, the defendant, Mickey Williams, was convicted of the crimes of burglary in the third degree, in violation of General Statutes § 53a-103,[1] and larceny in the second degree, in violation of General Statutes (Rev. to 1981) § 53a-123.[2] From this judgment the defendant appeals, claiming that the trial court erred: (1) in its jury instructions on the elements of burglary in the third degree in that it unconstitutionally relieved the state of its burden of proving that he acted with the requisite specific intent; (2) in its reinstruction to the jury on the issue of value; and (3) in its failure to appoint counsel to represent him at his sentencing hearing. We find error only on the last claim and remand for resentencing.

At approximately 1 a.m. on July 19, 1979, Arlene Taiyebain was sitting in front of her apartment building, located across the street from Feinson's Men's and Boy's Store (Feinson's) in Danbury. Immediately after she heard an unusual noise, she saw a black man dressed in white clothing running through the store, grabbing merchandise off the apparel racks. Taiyebain immediately called the police. She then saw the man, whom she recognized as a person she had seen before, leave the store carry-

---

[1] "[General Statutes] Sec. 53a-103. BURGLARY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] "[General Statutes (Rev. to 1981)] Sec. 53a-123. LARCENY IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle, (2) the value of the property or service exceeds five hundred dollars, or (3) the property, regardless of its nature or value, is taken from the person of another."

ing clothing, cross the street and enter an alley. A few minutes later, the man emerged from the alley with another individual, crossed the street and re-entered Feinson's. The man Taiyebain had recognized then continued to gather clothing off the racks.

Soon thereafter an officer of the Danbury police department arrived at the scene. He observed the store's rear door shattered and a black man, wearing a white "t-shirt" and light tan pants, leaving the scene on foot carrying clothing. The officer followed the man down an alley but was unable to catch him because the alley became impassable for his cruiser. Several other police officers saw a black man in a white "t-shirt" running through alleys behind the store, and enter an alley behind a restaurant. The officers searched the alley until they noticed the defendant's foot protruding from a garbage dumpster. The officer originally on the scene immediately identified the defendant as the man he had seen in close proximity to the shattered back door at Feinson's. At the scene Taiyebain also positively identified the defendant as the man she had seen in the store and whom she had seen previously. The defendant was taken into custody and two bundles of clothing bearing Feinson's labels and price tags were subsequently found in nearby alleys. The clothes were later examined by the store's owner and manager and determined to have a market value of $1150 for one pile and $1295 for the other.

The defendant was charged in a substitute information with burglary in the third degree, General Statutes § 53a-103, and larceny in the first degree, General Statutes (Rev. to 1981) § 53a-122. The court granted the defendant's request to proceed to trial pro se, and ordered a public defender to be available in the courtroom for consultation during the proceedings as standby counsel. At trial the defendant presented a defense of alibi and misidentification. He claimed that

he had been at a bar with his brother until it closed at 1 a.m. that morning and then walked home by way of the alley where he was discovered. The defendant testified that when he saw the police officers he panicked because he was on parole and jumped into the dumpster to hide. The jury found the defendant guilty of burglary in the third degree. Although he was not found guilty of larceny in the first degree, he was convicted of the lesser included offense of larceny in the second degree.

I

The defendant first claims that the trial court's instructions to the jury on the elements required for a conviction of burglary in the third degree violated his constitutional rights by relieving the state of its burden of proving the requisite specific intent in violation of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). Although the defendant took no exception to the instruction he now challenges, we will review his claim under the "exceptional circumstances" rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). See *State* v. *Amarillo,* 198 Conn. 285, 299 n.9, 501 A.2d 1195 (1986); *State* v. *Fernandez,* 198 Conn. 1, 18, 501 A.2d 1195 (1985); *State* v. *Shine,* 193 Conn. 632, 644 n.11, 479 A.2d 218 (1984).

The defendant levels his constitutional attack on the following language in the court's instruction on the specific intent necessary for the crime of burglary: "Burglary is an intrusionary crime. In other words, regardless of the nature of the intrusion it must be proven that the defendant has entered the building unlawfully and . . . that he did so with the intention of committing a crime therein. Intent is used and [sic] established if at all by circumstantial evidence. In addition in this case if you find the evidence in accordance with what the state offered you *must* find the intent

would infer from conduct. And that of course [is] a question of fact."[3] (Emphasis added.)

The due process clause of the fourteenth amendment to the United States constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). On the basis of this principle, a trial court is prohibited from incorporating evidentiary presumptions in its jury instructions that have the effect of relieving the state of its burden of proving every essential element of the crime. *Francis* v. *Franklin,* 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); *Sandstrom* v. *Montana,* supra, 520–24; *Patterson* v. *New York,* 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). In *Sandstrom* v. *Montana,* supra, 517, the United States Supreme Court held that a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violated the defendant's due process rights because a reasonable juror could have interpreted it as a conclusive or burden-

---

[3] After the defendant's brief was filed in this case, the state filed a motion for rectification with the trial court, seeking alterations in the portions of the transcript of the jury instructions pertaining to intent. After a hearing the court, *Moraghan, J.,* granted the state's motion and ordered that corrected transcript pages be prepared. On April 29, 1985, the defendant filed a motion for review with this court claiming that the trial court's wholesale changes were unsupported by the record below. We granted the motion to review, but denied the relief requested therein *without* prejudice to renewal at a full hearing. The court also ordered the defendant to file a supplemental brief addressing only those new issues raised by the trial court's revision of the transcript. Based on a careful re-examination of the record and transcript from the hearing on the motion for articulation and the papers filed with the motion for review, we decide today to address the issues on appeal on the basis of the *original* transcript. We therefore disregard all corrections made in the transcript by the trial court. See *Papallo* v. *Meriden Savings Bank,* 128 Conn. 289, 291, 22 A.2d 637 (1941). It is, therefore, unnecessary to consider the defendant's additional claims, raised in his supplemental brief, based solely on the "corrected" transcript.

shifting presumption and thus relieved the state of its burden of proving the critical element of intent. See *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978); *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). The defendant here claims that the jury instructions had the effect of relieving the state of its burden of persuasion on the issue of intent by creating a mandatory conclusive presumption of intent upon proof by the state of the physical acts constituting the burglary.[4]

"The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. See *Ulster County Court* v. *Allen,* [442 U.S. 140, 157–63, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)]. That determination requires careful attention to the words actually spoken to the jury, see [id.], at 157–159, n. 16, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom* v. *Montana,* supra, 514; see *State* v. *Vasquez,* 182 Conn. 242, 247, 438 A.2d 424 (1980). *Sandstrom* does not invalidate, for example, the use of an "entirely permissive inference or presumption, which allows—but does not require—the trier of fact

---

[4] "A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from the case once the State has proven the predicate facts giving rise to the presumption. A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted. See *Sandstrom* v. *Montana,* 442 U.S. 510, 517–18 [99 S. Ct. 2450, 2455–56, 61 L. Ed. 2d 39] (1979)." *Francis* v. *Franklin,* 471 U.S. 307, 314 n.2, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985).

We agree with the defendant and the state that the challenged instruction here, because it neither used the word "presume" nor explicitly addressed the burden of proof, could not have been interpreted as burden-shifting, but only as a conclusive presumption.

to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant." *Ulster County Court* v. *Allen,* supra, 157; *State* v. *Arroyo,* 180 Conn. 171, 175, 429 A.2d 457 (1980). We must, therefore, determine whether the challenged portion of the instruction here creates a mandatory presumption of intent or merely a permissive inference. See *Sandstrom* v. *Montana,* supra, 520–24. "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis* v. *Franklin,* supra, 314. A mandatory presumption violates the due process clause if it relieves the state of the burden of proving an essential element of the offense; *Patterson* v. *New York,* supra, 215; while a permissive inference violates the strictures of due process only if the suggested conclusion is not justified by common sense in light of the facts proven. *Ulster County Court* v. *Allen,* supra, 157–63.

The challenged sentence in this case was clearly cast in mandatory language. It instructed the jurors that they "*must* find the intent would infer from conduct," if they found "evidence in accordance with what the state offered . . . ." (Emphasis added.) Although these words are garbled, the defendant claims that they convey precisely the same message as the language held unconstitutional in *Sandstrom* v. *Montana.* A reasonable juror could easily have viewed such language as mandatory, requiring him conclusively to presume an essential element of the offense of burglary, intent to commit a crime within the building, upon proof of the defendant's unlawful entry or presence in the building. In this way the instructions "undermine[d] the fact-finder's responsibilty at trial, based on evidence

adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Ulster County Court* v. *Allen,* supra, 156. The challenged instructions, standing alone, undeniably created an unconstitutional mandatory conclusive presumption with respect to the element of intent. *Francis* v. *Franklin,* supra, 318.

The inappropriate language, however, did not stand alone. Id., 328 (Powell, J., dissenting). In reviewing instructions to the jury we examine the charge as a whole and will not sever one portion and analyze it in isolation from the rest. *Cupp* v. *Naughten,* 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Truppi,* 182 Conn. 449, 458, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981). We have carefully examined the whole charge and have concluded that additional language, not present in the *Sandstrom* v. *Montana* charge, was sufficient to rectify the improper use of the word "must" and to prevent the jury from unconstitutionally relieving the state of its burden of persuasion on the element of intent. See *State* v. *Amarillo,* supra, 303; *State* v. *Asherman,* 193 Conn. 695, 734, 478 A.2d 227 (1984); *State* v. *Vitale,* 190 Conn. 219, 221 n.1, 460 A.2d 961 (1983); *Crawford* v. *Warden,* 189 Conn. 374, 380–82, 456 A.2d 312 (1983).

During its general instructions, the court repeatedly informed the jury that the defendant was presumed innocent until proven guilty by the state on each charge. In each instance the court instructed the jury that the state had the burden of proving "each and every element" of the crimes beyond a reasonable doubt. These instructions regarding the presumption of innocence and requirement of proof beyond a reasonable doubt were also repeated at the conclusion of the charge. These general instructions, however, do not vitiate the possible erroneous interpretation of the challenged language. "[G]eneral instructions on the State's burden

of persuasion and the defendant's presumption of innocence are not 'rhetorically inconsistent with a conclusive or burden-shifting presumption,' because '[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied.' [*Sandstrom* v. *Montana,* supra], 518–519 n.7 . . . ." *Francis* v. *Franklin,* supra, 319. Therefore, a reasonable juror could have reasoned that although intent must be proven beyond a reasonable doubt, proof of unlawful entry into the building constituted proof of the defendant's intent to commit a crime therein.

Although general instructions on the burden of proof and presumption of innocence do not alone dispel the possibility of an unconstitutional interpretation of the challenged language, such instructions may be considered in light of the entire charge to determine whether the jury could have interpreted the presumption involved as mandatory or permissive. *State* v. *Stankowski,* 184 Conn. 121, 152, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). In this case, the balance of the court's instructions, considered in tandem with the court's general instructions, eliminated the possibility that any reasonable juror could have interpreted the instructions as mandating that the defendant's criminal intent be inferred from his conduct.

The trial court carefully instructed the jury, *after* it had used the challenged language, that a guilty verdict required a finding that the defendant had entered or remained unlawfully in a building and that he had done so with the intent to commit a crime therein. Immediately prior to the challenged sentence the court noted that "intent is used and established *if at all* by circumstantial evidence." (Emphasis added.) The trial court had previously instructed the jury that they were the sole arbiter of the facts and explained the concept

of cirumstantial evidence and inference, noting that an inference was a conclusion drawn from circumstantial evidence. Immediately after the challenged language the court commented, "[a]nd that of course [is] a question of fact." The court also pointed out that the "[r]equired intention must be spelled out if at all from the evidence that the defendant's conduct or facts or circumstances if you find that proof is present sufficient for you to [infer] that the defendant's intent was to commit a crime within the building then you may find him guilty of burglary." The court reiterated that a finding of guilty required proof beyond a reasonable doubt that the defendant entered or remained unlawfully in the building with the intention of committing a crime therein, emphasizing: "If you find all those elements present, then you may of course convict." Most important, however, is the court's instruction to the jury that if it found that the defendant had unlawfully entered or remained in the building, but did not possess the intent to commit a crime therein, the defendant could be found guilty of criminal trespass, but *not* of burglary: "The only difference is that there is no intention to commit a crime in the building." No reasonable juror, in light of this instruction, could have interpreted the *entire* instructions as mandating a finding of intent simply because the conduct elements of burglary were established.

A reasonable juror, considering the instructions in their entirety, would have concluded that the defendant's intent to commit a crime in Feinson's was a question of fact and that such intent was a mental state which must be proven, if at all, by circumstantial evidence. See *State* v. *Harrison,* 178 Conn. 689, 695, 425 A.2d 111 (1979). A reasonable juror could not have interpreted the instructions as creating a mandatory conclusive presumption on the crucial element of intent. Because the charge read as a whole clearly

dissipates the improper isolated use of the word "must," we hold that the charge did not violate the defendant's rights under the due process clause. This conclusion makes it unnecessary for us to consider whether the misstatement in the charge may have been harmless error, which the state claims as an alternative ground for sustaining the conviction. See *Francis* v. *Franklin,* supra, 325; *Connecticut* v. *Johnson,* 460 U.S. 73, 85–86, 103 S. Ct. 969, 74 L. Ed. 823 (1983); *State* v. *Truppi,* supra, 466.[5]

## II

The defendant next claims that the trial court's reinstruction on the value element of the larceny charge was so incomplete and misleading that it violated due process and deprived him of a fair trial. In its initial instructions the trial court highlighted the testimony concerning the value of the stolen property and accurately instructed the jury as to the value requirements for the various degrees of larceny. During its deliberations the jury sought clarification of the court's instructions on larceny, asking the court: "[I]s the jury allowed to question the 'fair market value of the clothes' which were taken or do we have to go by the testimony given?" In response, the court provided the following supplemental instruction: "With respect to the first part of the question, the jury is free to question any evidence which was offered. The jury may accept any part of the testimony of any witness or may disregard part of it or disbelieve part of it or all of it or it may believe all of it. It is for you to determine whether or

---

[5] We see no merit in the defendant's claim raised in his supplemental brief that "the absence of an accurate transcript [for our review] deprives him of his right to a meaningful appeal under the due process clauses of the state and federal constitutions." See *Cole* v. *United States,* 478 A.2d 277, 281 (D.C. 1984). The isolated passages in the transcript, which may have resulted from stenographic errors, have been adequately reconstructed favorably to the claim raised by the defendant.

not you believe the testimony that you heard, how much of that you heard you do accept, *or you do not have to go by the testimony given. . . .*" (Emphasis added.) The defendant submits that the last clause of this reinstruction was erroneous because it permitted the jury to disregard the testimony presented, to speculate on the element of value, and, therefore, to return a verdict unsupported by the evidence. We disagree.

Although the defendant failed to except to the reinstruction on value, we review this claim under the "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), because the defendant claims that the effect of the objectionable clause was to invite a jury verdict predicated upon speculation and conjecture thus resulting in a fundamental due process violation. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Such a claim does necessitate review for the limited purpose of determining whether a fundamental constitutional right has been infringed. *State* v. *Leecan,* 198 Conn. 517, 538, 504 A.2d 480 (1986); *State* v. *Hinckley,* 198 Conn 77, 86–87, 502 A.2d 388 (1985).

In evaluating a claim that a supplemental charge is erroneous we must examine both the main and supplemental charge as a whole to determine whether the jury could reasonably have been misled. *State* v. *Reed,* 174 Conn. 287, 308, 386 A.2d 243 (1978). We must recognize, however, that "[a] supplemental charge . . . enjoy[s] special prominence in the minds of the jurors" because it is fresher in their minds when they resume deliberation. *Arroyo* v. *Jones,* 685 F.2d 35, 39 (2d Cir.), cert. denied, 459 U.S. 1048, 103 S. Ct. 468, 74 L. Ed. 2d 617 (1982); see *Bollenbach* v. *United States,* 326 U.S. 607, 611–12, 66 S. Ct. 402, 90 L. Ed. 350 (1946).

In the court's original instructions the jury was correctly instructed that it was to determine the facts

"solely upon the evidence giving to each part of the evidence the weight you consider it deserves." The court also advised the jury that it was not required to believe even uncontradicted testimony. Specifically on the issue of value, the jury was instructed that "value," as used in defining the degree of larceny, meant the market value of the property at the time and place of the crime, or the "price which the thief would pay for the property if he bought the property." See General Statutes § 53a-121 (a) (1); *State* v. *Taylor,* 196 Conn. 225, 229, 492 A.2d 155 (1985). The jury was further instructed that evidence of the sale prices of the items was only evidence of their market values. Finally, the jury was instructed that a verdict of guilty of larceny in the first degree required a finding that the value of the property exceeded $2000 and that larceny in the second degree would have occurred if the state proved the value of the property to be greater than $500.

The essence of the jury's question, which prompted the supplemental instruction, was whether it was bound by the testimony of the witnesses produced by the state as to the fair market value of the clothing. Theirs was the only testimony on this subject, and, if fully accepted by the jury, would have resulted in a conviction of first degree larceny based upon a finding that the value of the stolen property exceeded $2000. The court correctly instructed the jury that it was not bound by their testimony in responding that "you do not have to go by the testimony given." Evidence regarding value "is to aid the trier to arrive at [its] own conclusion which is to be reached by weighing the opinions of the experts in light of all the circumstances in evidence bearing on value and [its] own general knowledge going to establish it." *Bridgeport Hydraulics Co.* v. *Stratford,* 139 Conn. 388, 397–98, 94 A.2d 1 (1953). Although the court's particular language was not a model of precision, it was not misleading in light of the earlier instruc-

tion that facts are to be determined solely from the evidence. "Of necessity, additional instructions given in immediate response to a request are more informal and expressed with less exactness than are studiously prepared formal charges . . . ." *State* v. *Parker,* 114 Conn. 354, 368, 158 A. 797 (1932). We are unable to agree with the defendant that the jury could reasonably have understood the supplemental instructions as allowing it wholly to disregard the state's evidence of value and to embark on its own determination of the fair market value of the property. The supplemental instruction, viewed in the context of the charge as a whole, could not reasonably have misled the jury in its conclusion. Pursuant to the reinstruction, the jury chose not to believe completely the testimony of the store's owner and manager, who had testified for the state. The jury, as it was entitled, chose to believe the state's evidence of value only to the extent that the value of the stolen property exceeded $500. This conclusion was not based on speculation or conjecture, but upon its view of the state's evidence, which it discounted in the light of its own experience.[6] The trial court's supplemental instruction on value was not misleading in the context of the whole charge and, therefore, did not violate the defendant's constitutional right to a fair trial. See *State* v. *Evans,* supra.

## III

The defendant's remaining claim of error is that the trial court denied him assistance of counsel at his sen-

---

[6] In support of his position the defendant inappropriately relies on *State* v. *Saracino,* 178 Conn. 416, 423 A.2d 102 (1979) (per curiam). In *Saracino* we held that a jury's determination of value for a charge of larceny in the first degree was a product of speculation and conjecture because there was insufficient evidence presented by the state to support the jury's conclusion that the defendant had received stolen property valued in excess of $2000. Id., 420. In the present case the state clearly presented evidence sufficient to justify the jury's verdict of guilty of larceny in the second degree.

tencing hearing in violation of the sixth and fourteenth amendments to the federal constitution and article first, § 8, of our state constitution. We examine this claim in the context of these additional facts: Prior to trial, on August 15, 1979, George Thim, the defendant's public defender, requested a continuance because the defendant wanted to obtain a private lawyer. After the court denied the request, the defendant requested permission to represent himself at trial. After discussing with the defendant the dangers of self-representation, the court granted the request, concluding that the defendant's decision was "knowingly and intelligently" made. See Practice Book § 961; *Edwards* v. *Arizona,* 451 U.S. 477, 482, 101 S. Ct. 1880, 68 L. Ed. 2d 378, reh. denied, 452 U.S. 973, 101 S. Ct. 3128, 69 L. Ed. 2d 984 (1981); *Faretta* v. *California,* 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Johnson* v. *Zerbst,* 304 U.S. 458, 464–65, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *State* v. *Gethers,* 193 Conn. 526, 533, 480 A.2d 435 (1984). The court informed the defendant that Thim would be available "for consultation" but would *not* be allowed to participate in the trial *"unless* you request him to be your attorney." (Emphasis added.) The defendant conducted his entire trial pro se. When the case was presented for sentencing, Thim was present in the courtroom. The court addressed the defendant, reminding him that Thim was still available for consultation. In response, the defendant initiated the following colloquy:

"Mr. Williams: I would like to have him be appointed back as my Public Defender. I would like him appointed back as my Public Defender.

"The Court: As far as appointing him right now, no. As far as appointing him as your Public Defender at this point, I will not do it.

"He was appointed for you and you told me that you did not want him. You wanted to represent yourself. I explained to you in regard to this in great specific detail just how foolish I thought this decision was. I told you you should understand just what the impact of such a decision was. I gave you time to make up your mind and told you that you could have more time when we returned.

"You said that you did not want him as your counsel. Even then I made him available for consultation. You made the decision and I concluded my [sic] saying that if you are not happy with the outcome, it was too late to indicate your regrets.

"I will not appoint Mr. Thim as Public Defender. He was removed at your request. I will, however, as I said, let you consult with him. He may be available to you for that purpose.

"Mr. Williams: Is it possible that another Public Defender can represent me?

"The Court: Not at this stage of the proceedings, no."

The defendant represented himself at sentencing and was sentenced to a term of imprisonment of not less than two nor more than five years on each count, such sentences to be served consecutively.

The state does not dispute that the defendant had a state and federal constitutional right to assistance of counsel during the sentencing hearing. In *Consiglio* v. *Warden,* 153 Conn. 673, 676, 220 A.2d 269 (1966), we held that "the sentencing process is a critical stage of a criminal trial." See *Gagnon* v. *Scarpelli,* 411 U.S. 778, 781, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *McConnell* v. *Rhay,* 393 U.S. 2, 3–4, 89 S. Ct. 32, 21 L. Ed. 2d 2 (1968); *Townsend* v. *Burke,* 334 U.S. 736, 740, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948). The state

argues, however, that the defendant's voluntary relinquishment of his right to counsel during trial extended through the sentencing hearing. We disagree.

The defendant does concede that absent an indication to the contrary, a trial court is entitled to rely on a presumption that a defendant's election to represent himself continues through sentencing. "A competent election by the defendant to represent himself and to decline the assistance of counsel once made before the court carries forward through all further proceedings in that case unless appointment of counsel for subsequent proceedings is *expressly requested by the defendant* or there are circumstances which suggest that the waiver was limited to a particular stage of the proceedings." (Emphasis added.) *Arnold* v. *United States,* 414 F.2d 1056, 1059 (9th Cir. 1969); see *Panagos* v. *United States,* 324 F.2d 764, 765 (10th Cir. 1963); *Davis* v. *United States,* 226 F.2d 834, 840 (8th Cir. 1955), cert. denied, 351 U.S. 912, 76 S. Ct. 702, 100 L. Ed. 1446 (1956). The defendant asserts, however, that because his voluntary waiver of counsel at the outset of the trial was not intended to extend through the sentencing procedure, and because he clearly asserted his desire for counsel at sentencing, the court unconstitutionally refused to appoint him counsel.

The record here does not establish that the defendant was informed by the court that his initial waiver of counsel would extend to sentencing. In fact, the trial court's comment in reference to the standby counsel, "I will not allow him to participate unless you request him to be your attorney," implied that the court would reappoint Thim to represent the defendant if the defendant requested it. Nor is there any indication on the record that supports a conclusion that the defendant intended to waive counsel at sentencing. The defendant explained to the court that he wished "to represent myself in this *trial.*" (Emphasis added.) The

court inquired, "[y]ou wish to represent yourself in this trial?" The defendant responded, "Yes." Most importantly, the defendant expressly requested that Thim be appointed to represent him at sentencing. Because the defendant specifically requested counsel at sentencing, and gave no indication that his initial waiver extended beyond the adjudicatory stage of the prosecution; see *Gilbert* v. *California,* 388 U.S. 263, 271, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); the defendant was deprived of his constitutionally protected right to counsel.

There is no error in the judgments convicting the defendant of burglary in the third degree and larceny in the second degree.

There is error in the denial of the defendant's request for counsel at the sentencing proceeding.

The sentence imposed is vacated and the case remanded for resentencing.

In this opinion the other judges concurred.