STATE OF CONNECTICUT *v.* ATALIE C. SMITH
(12447)

LAVERY, LANDAU and SCHALLER, Js.

---

Argued December 1, 1994—decision released May 23, 1995

*Joseph S. Elder,* for the appellant (defendant).

*David J. Sheldon,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, and *James A. Prior,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant, Atalie C. Smith, appeals to this court from a judgment of conviction, after a jury trial, of possession of more than one kilogram of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b), and possession of

more than four ounces of marijuana in violation of General Statutes § 21a-279 (b). The defendant claims (1) that the trial court improperly denied her motion to suppress the evidence seized from the defendant in an illegal search and seizure within the meaning of the fourth amendment, and (2) that the trial court's instruction to the jury on constructive possession was improper. We affirm the judgment of the trial court.

As to the first claim, the following facts are set forth in the affidavit[1] for the search warrant. On March 18,

[1] The affidavit states: "(1) That the undersigned affiant, Detective William Flynn, is a sworn member of the Connecticut State Police Department and has been a member of said department for approximately twenty-three and a half years and is presently assigned to the State Police Troop 'W' Drug Interdiction Unit at Bradley International Airport. That the affiant Flynn has conducted and participated in numerous investigations involving the trafficking of illicit narcotics and controlled substances which have led to the arrests and convictions of those persons involved. That the affiant Flynn has attended various schools of training and seminars dealing with narcotic investigations, search and seizure and airport narcotic enforcement, affiant Flynn has become familiar with the methods and practices of narcotic violators and the deception used by them to avoid detection when transporting narcotics using commercial airlines through United States Airports.

"(2) That the undersigned affiant, Detective G. S. Wagner, is a sworn member of the Connecticut State Police Department and has been a member of said department for approximately fifteen years and is presently assigned to the State Police at Troop 'W' where his duties involve criminal investigations and narcotic investigations. The affiant is also trained in the use of a narcotic detection canine and is presently assigned the canine 'Zak.' Both he and Zak have participated in searches for illegal narcotics both on and off the airport involving structures, vehicles, aircraft, boats and luggage and have been successful in locating illegal narcotics.

"(3) That at all pertinent times mentioned herein, the affiants were acting in their official capacity as Law Enforcement Officers for the State of Connecticut and the facts and circumstances contained herein are related from their personal knowledge and/or observations and include information from persons with personal knowledge of the facts and circumstances contained herein who have related their knowledge to the affiants, as well as information from brother police officers who have reported their knowledge to the affiants.

"(4) That on 3/18/92 at approx. 0830 hours Detective James Allen of the State Police Drug Interdiction Unit at Troop W, Bradley International Airport, received a phone call from the Drug Enforcement Administration Task

1992, Detective James Allen of the Connecticut state police drug unit at Bradley International Airport (Bradley) received a telephone call from the federal Drug Enforcement Administration (DEA) at the Cincinnati Airport that the DEA had just arrested an individual named Elaine D. Yarborough when she was found to have been in possession of fourteen pounds of marijuana that was wrapped in plastic wrap and fabric softener sheets to mask the odor. The contraband was found in a suitcase in her possession for which she gave the arresting officer, Special Agent Joe Jones, consent to search. Yarborough had left Los Angeles on March 17, 1992, on Delta flight no. 1026 and was changing to Delta flight no. 1520 in Cincinnati, which was scheduled to arrive at Bradley

Force at the Greater Cincinnati, Ohio, Airport, that they had just arrested a black female giving the name of Elaine D. Yarborough, DOB 6/16/68 or 11/16/69 when she had been found in the possession of approx. 14 lbs of marihuana. The marihuana was wrapped in saran wrap and fabric softener sheets in an attempt to mask the odor of the marihuana. The packages were found in a suitcase in her possession for which she had given the arresting officer, S/A Joe Jones of D.E.A., a consent to search.

"(5) That the subject Yarborough had left Los Angeles, California, on 3/17/92 at approx. 2305 hours on board Delta flight #1026 and was changing to Delta flight #1520 in Cincinnati to arrive at Bradley International at approx. 0850 hours on 3/18/92. The Los Angeles area is a known source city for marihuana.

"(6) That at approx. 1418 hours Detective James Allen received another phone call from Lt. Blackburn of the Greater Cincinnati Airport who stated another female had been with Yarborough but had not been interviewed by S/A Joe Jones at the time. They believed that this other female had made the second part of the flight arriving at Bradley this A.M. The name of the female was Cynthia Williams. That Detective Allen checked with the Delta Baggage agent John Satterfield and located a black Trident hard-sided suitcase with a name tag in the name of C. Williams showing an address of 346 South Elm St., New Haven, CT. The suitcase had arrived on Delta flight 1520 this A.M. bag tag no. 53-91-83 and had been unclaimed by the owner and no inquiries had been made by the owner as to where her bag was. According to S/A Joe Jones he had information that Williams and Yarborough had traveled together on this flight to Cincinnati.

"(7) That Detective Wagner conducted a controlled search of the suspect luggage by placing four other pieces of luggage approx. four feet apart and having his narcotics trained canine 'Zak' conduct a sniff test of each

on March 18, 1992, at 8:50 a.m. Los Angeles is known to be a source city for marijuana. At 2:18 p.m. on the same day, Allen received a call from the DEA in Cincinnati stating that another female had been with Yarborough and had not been interviewed by Jones. They believed the other female, whose name was Cynthia Williams, had made the second part of the flight to Bradley. Allen checked with the Delta baggage agent and located a black hardsided suitcase with the name C. Williams and an address of 346 South Elm Street, New Haven, on a name tag. The suitcase had arrived on the morning Delta flight with bag tag no. 53-91-83.

piece of luggage. That a positive alert was obtained on the suspect luggage. Trooper Pablo Arroyo also of Troop W who also has a narcotics detection trained canine named 'Mike' also conducted a controlled search of the luggage as described above and also had a positive alert on the suspect baggage.

"(8) That affiant Flynn from his specialized training in Airport Narcotics Interdiction has knowledge that one of the ways persons transport illicit narcotics is the use of carry-on and checked baggage to transport the narcotics via commercial aircraft. Also from this affiant's experience as a narcotics investigator knows that drugs, including marihuana, are commonly brought to Connecticut from the southwest region of the country via commercial airline flights.

"(9) That affiant Flynn had x-rayed the suitcase in question for security reasons as it appeared that the owner had arrived on the same flight as the luggage but never took possession. That upon x-ray of the suitcase there appeared to be four square packages taking up almost the entire interior of the suitcase and was a combined weight of approx. fifty-one pounds. The suitcase also gave off an odor of what seemed to be fabric softener.

"(10) That a check of the address in New Haven was done by Trooper Pablo Arroyo with Det. Hilden Wright of the New Haven Narcotics Unit. According, to Wright there is no S. Elm St. in New Haven. A check for a phone number listed for the suspect Williams through telephone information also showed no phone number listed.

"(11) That checking the phone number given by the suspect Cynthia Williams in her reservation with Delta Airlines, 1-310-419-7220, it was determined through a phone call that the phone had been disconnected.

"(12) That based on the information contained herein, affiants Flynn and Wagner have probable cause to believe, and do believe, that located in the black Trident hardsided suitcase with the name tag of C. Williams 846 S. Elm St., New Haven, Delta tag number 53-91-83, there is evidence of violations of Section 21a-278 (c), Possession of Marihuana With Intent to Sell in violation of the Connecticut General Statutes."

The bag had not been claimed by the owner nor had any inquiry been made about it. Jones had information that Yarborough and Williams had traveled together on the trip to Cincinnati. Detective Gerald Wagner of the Connecticut state police conducted a contraband search of the suspect luggage by placing four other pieces of luggage approximately four feet apart and having his narcotics-trained canine conduct a sniff test of each piece of luggage. A positive alert was made on the defendant's luggage. Trooper Pablo Arroyo had his narcotics-trained canine conduct the same test, which also gave an alert on the defendant's luggage. One of the affiants on the affidavit, Detective William Flynn, stated that based on his training in airport narcotics interdiction that illegal narcotics are transported by carry on and checked baggage on commercial airlines and that drugs including marijuana are brought to Connecticut from the southwest region via commercial airlines. Flynn had the suitcase x-rayed for security reasons since it appeared that the owner had arrived on the flight but had not taken possession. The X ray showed four square packages that took up almost the entire interior of the suitcase. The suitcase gave off an odor of fabric softener and weighed fifty-one pounds. A check of the New Haven address showed there was no South Elm Street in New Haven. A check of the phone number for the suspect showed no listing and the phone number the suspect Cynthia Williams gave Delta Airlines was disconnected.

The jury could have reasonably found the following additional facts that are necessary to the disposition of this case. After the search warrant was issued, the suitcase was opened and the detectives found five bundles wrapped in plastic wrap and what appeared to be fabric softener sheets. Three of the packages contained marijuana and two of the packages contained cocaine.

The detectives removed the drugs from the suitcase and instructed the Delta baggage agent to contact them if anyone arrived to claim the suitcase.

The next day, March 19, the defendant appeared at the Delta baggage claim counter, and presented the claim check to the suitcase. The baggage agent alerted the detectives, who approached the defendant. The defendant told them that her name was Cynthia Williams, and that she was there to pick up the bag she brought from California. She produced a California identification card in the name Cynthia Williams, and her airline ticket from March 18, in the same name. The detectives later learned her name is Atalie C. Smith. The defendant told the detectives that she had brought the suitcase as a favor to a friend of her brother's and that she thought there were several thousand dollars in it. She also said that she did not claim the suitcase when her flight arrived on March 18, because she was tired.

The state introduced evidence at trial that on October 17, 1991, the defendant had been arrested at John F. Kennedy Airport in New York City for possession of a checked suitcase containing three bundles of marijuana. When the defendant was arrested in New York, she used the name Quiana Pipion and stated she thought the suitcase contained "drug money."

The defendant testified at trial that she had boarded the Delta flight in Los Angeles under the name Cynthia Williams and had used the airline ticket under that name. She had the claim check for the suitcase stapled to her ticket and knew the claim check was for the suitcase, but said she did not claim the suitcase on March 18, because during the flight she "had thoughts and I was thinking this is not right. And I decided not to pick up the suitcase again." She testified she "decided I didn't want anything to do with the bags . . . I've

made a mistake before and I don't want to have to go through it again." She then took a cab to New Haven.

The defendant filed a boiler plate motion to suppress claiming: "The defendant respectfully moves this Honorable Court pursuant to Sections 820 et. seq. of the Connecticut Practice Book, the fourth and fourteenth amendments to the constitution of the United States and article I, § 7, of the constitution of the state of Connecticut, to suppress as the fruits of an illegal arrest, an unlawful search and a seizure of the defendant's effects seized at Bradley International Airport, Windsor Locks, Connecticut, on or about March 18th and 19th, 1992 and any subsequent searches and seizures of the defendant, her papers and effects, including, but not limited to, any evidence allegedly found in a certain suitcase confiscated from the Delta Airline baggage holding center, any and all tangible and intangible evidence including, but not limited to, any and all written or oral statements made by the Defendant, and any and all items seized from or about their persons and effects."

Prior to trial, the trial court conducted a hearing on the defendant's motion to suppress and a motion in limine. The purpose of the hearing was to address the defendant's claim attacking the veracity of the affidavit supporting the application for the search warrant pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

The trial court found that the defendant had a reasonable expectation of privacy in the suitcase sufficient to confer standing to challenge the search authorized by the warrant. In an effort to obtain a *Franks* hearing, the defendant then sought to make an offer of proof "to establish that the information which is in the warrant is misleading." After hearing the defendant's offer of proof, the trial court held that she had not met her

burden of establishing "the substantial preliminary showing to be entitled to a *Franks* hearing." The denial of the defendant's request for a *Franks* hearing is not a claim in this appeal. The motion to suppress was denied. The trial was held, the defendant was found guilty and this appeal was filed.

I

The defendant then sought to challenge the information contained within the four corners of the warrant application for lack of probable cause. The defendant argued that the application failed to establish the reliability of the dogs used in the sniff search of the suitcase, and that the X-ray search was an intrusion into the suitcase. The only facts introduced during the suppression hearing concerning the X ray were in the brief description of the procedure in the application for the search warrant, which was defendant's exhibit A in the suppression hearing. No other testimony or information was adduced at the hearing. The trial court orally denied the motion to suppress. The record does not contain a memorandum of decision, a signed transcript of the proceedings, or a motion for articulation. The state filed in the appendix to its brief a limited portion of the transcript setting forth the exchange between the court and defendant's counsel on the subject of the X ray of the suitcase. The appellant bears the responsibility of providing the court with an adequate record for review. Practice Book § 4061. The appellant has the responsibility of ensuring that the trial court has signed a copy of the transcript when the decision has been rendered orally. Practice Book § 4059. Here, the trial court neither issued a written memorandum nor signed a transcript of its oral decision.

"While we do not condone this deviation from the rule of practice, we may disregard certain procedural irregularities and treat the case as the parties have

treated and presented it. We do so here." (Internal quotation marks omitted.) *Lockwood* v. *Professional Wheelchair Transportation, Inc.*, 37 Conn. App. 85, 89, 654 A.2d 1252 (1995). Review is appropriate in this case because we have been presented with the necessary factual findings on which to base a decision. Cf. *State* v. *Salerno*, 36 Conn. App. 161, 165–66, 649 A.2d 801 (1994), cert. granted, 232 Conn. 906, 653 A.2d 193 (1995). We limit our review as to whether within the four corners of the affidavit sufficient probable cause existed for the magistrate to issue the warrant. We will base our review on whether sufficient probable cause existed with references to the X ray excised from the affidavit.[2] We find that even with the clause on the X ray excised, the magistrate had sufficient probable cause to issue the second warrant. We recently decided a similar issue in *State* v. *Torres*, 36 Conn. App. 488, 495–96, 651 A.2d 1327, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995), in which we stated: "The trial court's decision is not erroneous, despite the presence of improperly obtained evidence in the affidavit, if the lawfully obtained evidence considered by itself is sufficient to establish probable cause. *State* v. *Ostroski*, 201 Conn. 534, 544–45, 518 A.2d 915 (1986); *State* v. *Arpin*, 188 Conn. 183, 190–91, 448 A.2d 1334 (1982); *State* v. *Palangio*, 24 Conn. App. 300, 306, 588 A.2d 644, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991); *State* v. *Rogers*, 18 Conn. App. 104, 556 A.2d 1030 (1989). 'Probable cause to search exists if: (1) there is probable cause to believe that the particular items

_____

[2] The paragraph that was excised from the affidavit states: "(9) That affiant Flynn had x-rayed the suitcase in question for security reasons as it appeared that the owner had arrived on the same flight as the luggage but never took possession. That upon x-ray of the suitcase there appeared to be four square packages taking up almost the entire interior of the suitcase and was a combined weight of approx. fifty-one pounds. The suitcase also gave off an odor of what seemed to be fabric softener." We do not rule on or decide whether the X ray evidence is improperly obtained evidence.

sought to be seized are connected with criminal activity; and (2) there is probable cause to believe that the items named will be found in the place to be searched.' *State* v. *Barton*, 219 Conn. 529, 548, 594 A.2d 917 (1991); *State* v. *Sivri*, 231 Conn. 115, 142, 646 A.2d 169 (1994)."

In determining whether an affidavit established probable cause to issue a search warrant, the reviewing court applies the "totality of the circumstances" test set forth in *State* v. *Barton*, supra, 219 Conn. 544. The court must make "a 'practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit, including the "veracity" and the "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State* v. *Rodriguez*, 223 Conn. 127, 134–35, 613 A.2d 211 (1992).

Information in a search warrant affidavit received by one law enforcement agency from another law enforcement agency based on that agency's observations and investigation, although hearsay, is reliable and can be given credence by the issuing magistrate. *State* v. *Hoffler*, 174 Conn. 452, 460, 389 A.2d 1254 (1978). In *State* v. *Morrill*, 205 Conn. 560, 568, 534 A.2d 1165 (1987), the Supreme Court said, "A law enforcement officer, like the general public 'is generally presumed to be reliable, and thus no special showing of such reliability . . . is necessary' to establish probable cause."

The affidavit contained a statement that the Connecticut state police were notified by the DEA in Cincinnati that it had arrested a woman named Elaine Yarborough when she was found in possession of a suitcase containing marijuana wrapped in plastic wrap and fabric softener sheets, that Yarborough had planned to con-

tinue on to Hartford, that a second woman named Cynthia Williams was traveling with Yarborough and would be arriving at Bradley that morning.

The Connecticut state police then went to the Delta baggage agent and found that a black suitcase with a name tag that read C. Williams had arrived on the same Delta Airlines flight as Yarborough was scheduled to be on. The baggage remained unclaimed at the baggage counter almost five and one-half hours after the flight had arrived. Two separate canine sniff searches had alerted the Connecticut state police to the presence of narcotics. In *United States* v. *Place*, 462 U.S. 696, 707, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983), the United States Supreme Court held that a canine sniff by a trained narcotics dog does not constitute a "search" within the meaning of the fourth amendment. The court noted that the sniff "does not require opening the luggage" and "does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which the information is obtained through this investigative technique is much less intrusive than a typical search." Id. As in *State* v. *Torres*, 230 Conn. 372, 645 A.2d 529 (1994), in this case we do not have to decide whether a canine sniff was a search since it is unnecessary to have a standard in this case any higher than "a reasonable and articulable suspicion." To determine whether the police had a reasonable and articulable suspicion that warranted the canine sniff of the luggage, we look to the totality of the circumstances surrounding it. Id., 383. Here the police had information from the DEA in Cincinnati that two women were traveling together from California, that the DEA had searched the bag of one of the women and found a large amount of marijuana and arrested her, that the arrested woman's companion was going under the

name of Cynthia Williams, that the destination for both women was Bradley, and that a piece of luggage with the name of Cynthia Williams on the tag was not claimed more than five and one-half hours after the plane had landed and that it was in the possession of the Delta Airlines baggage clerk. This information was sufficient for the police to have a reasonable and articulable suspicion to conduct the two canine sniff tests. Subsequent to the completion of the sniff tests, the police smelled an odor of fabric softener from the luggage, found the address in New Haven to be nonexistent and found that the telephone number given to Delta Airlines by Williams had been disconnected. In our plenary review of the affidavit with the paragraph that referred to the X ray of the luggage excised, we find that there are more than ample facts to sustain the magistrate's finding of probable cause.

## II

The defendant's second claim is that the trial court improperly instructed the jury on constructive possession. The trial court gave the following instruction: "As long as the substance, the narcotic, is in a place where it is subject to the defendant's dominion and control, where the defendant can, if she wishes, go and get it, *'it is in her possession.'* " (Emphasis added.) The defendant claims that the trial court thus instructed the jury to draw a mandatory presumption that if the narcotics were in a place subject to the defendant's dominion and control, the jury must find that the defendant possessed the narcotics. " 'A mandatory presumption instructs the jury that it must infer the presumed fact if the state proves certain predicate facts. . . . A mandatory presumption violates the due process clause if it relieves the state of the burden of proving an essential element of the offense.' " *State* v. *Williams,* 199 Conn. 30, 36, 505 A.2d 699 (1986). We disagree.

A defendant is entitled to have the jury adequately and correctly instructed. *State* v. *Hines*, 187 Conn. 199, 206, 445 A.2d 314 (1982). The trial court's jury instructions must, therefore, be clear, accurate, complete and comprehensible. *State* v. *Kurvin*, 186 Conn. 555, 561, 442 A.2d 1327 (1982). The court does not, however, view instructions in artificial isolation from the overall charge. *State* v. *Reddick*, 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). " 'The issue is whether, in view of the charge read as a whole, that portion of the charge to which objection has been taken can be considered a basis for finding harmful error.' " *State* v. *Moss*, 189 Conn. 364, 368, 456 A.2d 274 (1983). "The test to be applied to any part of a charge is whether the charge, considered in its entirety, presents the case to the jury so that no injustice will result." *State* v. *Mackor*, 11 Conn. App. 316, 326, 527 A.2d 710 (1987).

"In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence, and exercised dominion and control over it." *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Brunori*, 22 Conn. App. 431, 435–36, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). The trial court correctly instructed the jury on this definition and included that they must find that the defendant had the requisite intent. The court instructed, "This element of possession means that the defendant knew of the narcotic character of the substance, that she knew of its presence, and that she exercised dominion and control over it. *Possession as used in the criminal statutes ordinarily signifies an intentional control of a designated thing accompanied by a knowledge of its character.*" (Emphasis added.)

The court then continued by defining actual and constructive possession. Later, relating the relevant law

to the facts of this particular case, the court explained: "Generally it's the state's claim that the defendant had constructive possession of the suitcase and its contents as represented by her airline ticket and baggage claim check and that she had the knowledge of the contents of the suitcase and the nature of the contents *and that she possessed the requisite intent.* The state claims there is sufficient circumstantial evidence concerning her statements and her conduct *from which the jury could infer her intent* and knowledge. The defense on the other hand claims that the defendant was never in possession of the suitcase and its contents at any relevant time in Connecticut. The defendant further alleges that the state has not proven the requisite intent and knowledge beyond a reasonable doubt. Let me just define that, *they have not proven the requisite intent relevant to the contents of the suitcase beyond a reasonable doubt.*" (Emphasis added.)

The defendant argued at trial and on appeal that the jury was entitled to know that they could infer intent, that the inference was not mandatory, and that the mere fact that the defendant possessed the claim check does not in and of itself equal possession. Her contention that the trial court "failed to include the intent requirement" lacks merit in view of the court's explanation and instruction on intent to the jury.[3] When reviewing a claim of instructional error, this court considers the challenged language in the context of the entire charge. *State* v. *Tucker*, 226 Conn. 618, 651, 629 A.2d 1067 (1993). The defendant's claim that the court's

---

[3] The court also instructed the jury generally on intent, and that it *could* be inferred from the defendant's conduct. "You may infer from the fact that the accused engaged in conduct that she intended to engage in that conduct. This inference is not a necessary one, that is you are not required to infer intent from the accused's conduct. But it is an inference you may draw if you find it is a reasonable and logical inference."

instruction articulated a mandatory inference that the defendant possessed the narcotics is inaccurate.

The judgment is affirmed.

In this opinion the other judges concurred.