Argued and submitted January 31, 1996; resubmitted In Banc January 14, reversed and remanded May 28, petition for review allowed September 23, 1997
(326 Or 57)
See later issue Oregon Reports

STATE OF OREGON,
*Respondent,*

*v.*

DESMOND UTHER SMITH,
*Appellant.*

(93CR815; CA A86622)

939 P2d 157

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

LANDAU, J.

Warren, J., concurring.

Deits, J., dissenting.

Edmonds, J., dissenting.

De Muniz, J., dissenting.

**LANDAU, J.**

In *State v. Juarez-Godinez*, 135 Or App 591, 604-05, 900 P2d 1044 (1995), *aff'd* 326 Or 1 (1997), we held that the use of a trained narcotics detection dog is a search within the meaning of Article I, section 9, of the Oregon Constitution. Left open in that decision was the question whether such "dog-sniff" searches are subject to the warrant and probable cause requirements of Article I, section 9, or are subject to some lesser standard based on the minimal nature of the intrusion involved in such searches. That question is before us in this case.

Defendant argues that the trial court erred in denying his motion to suppress evidence of narcotics discovered by means of a dog sniff. He argues that, because the dog sniff occurred without a warrant and without satisfying any recognized exception to the warrant requirement, the search was unconstitutional, and the subsequent seizure of evidence should have been suppressed. The state acknowledges that no warrant preceded the dog-sniff search, and it does not contend that it had probable cause to believe that evidence of narcotics would be found prior to the dog sniff. It nevertheless argues that the evidence need not be suppressed, because there was reasonable suspicion that evidence of a crime would be found. The state argues that we should, in effect, create an exception to the warrant and probable cause requirements of the constitution based on the minimally intrusive nature of dog-sniff searches.

■■ We conclude that the Oregon Constitution does not impose the warrant and probable cause requirements on the basis of relative levels of intrusiveness but, rather, on the existence of a "search" for evidence. Because a dog-sniff search is a search for evidence within the meaning of Article I, section 9, the warrant and probable cause requirements apply, and, because the dog-sniff search in this case occurred without satisfying those constitutional requirements, we agree with defendant that the evidence seized from the locker should have been suppressed.

In the summer of 1993, a confidential informant told Detective Plaster, of the Brookings Police Department, that

defendant was growing marijuana in the Brookings area and that he stored the marijuana in a storage unit in Brookings. In October 1993, the informant told Plaster that defendant had just harvested his marijuana for the year, that defendant would be in Brookings during specific weekends in October and that he was still renting the storage unit in Brookings. Later that month, the police searched defendant's house in Klamath Falls pursuant to a warrant. They seized marijuana and cash, and defendant was arrested and jailed.

Following defendant's arrest, Plaster called the manager of the storage facility identified by the informant and asked if defendant rented a storage unit there. The manager said that he was renting a unit to defendant at that time. Plaster and Detective Gardiner then went to the storage facility accompanied by Nitro, a dog that was trained to detect drugs. Plaster went to the manager's office to verify that defendant was renting storage unit number 125. The manager said that he was, but told Plaster that he could not search the unit until he had obtained a search warrant. Plaster did not ask the manager for consent to allow Nitro to sniff for drugs at the storage facility.

Meanwhile, Gardiner took Nitro into that part of the facility where the storage units were located and commanded the dog to search for drugs in the row that contained defendant's unit. Nitro "alerted," that is, indicated the presence of drugs, at unit 125. Plaster then asked the manager to place a lock on that unit while they secured a search warrant. The officers returned with a warrant to search the unit and, during the search, found marijuana and implements used to cultivate marijuana. Plaster testified that he knew that defendant had been taken into custody in Klamath Falls, but that defendant had access to a telephone even though in custody and that, in his experience, individuals in custody sometimes use telephones to contact accomplices and to continue to direct their drug operations.

The trial court concluded that the dog sniff was not a search. The court also concluded, relying on *State v. Hansen*, 295 Or 78, 664 P2d 1095 (1983), *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981), and *United States v. Allard*, 634 F2d

1182 (9th Cir 1980), that, even if the padlocking of the storage unit by the officers did constitute a seizure, the evidence should not be suppressed.

On appeal, defendant assigns error to the court's denial of his motions to suppress. He argues that the trial court erred in denying his first motion because deploying the drug-sniffing dog was a search that required either a warrant or an exception to the warrant requirement. He argues that the court erred in denying his second motion because placing a padlock on defendant's storage unit was a seizure that also required either a warrant or an exception to the warrant requirement. Because we agree with defendant on his first argument, we do not address his second.

Defendant argues that a dog-sniff search, like any other search for evidence, must comply with the requirements of Article I, section 9; namely, that the search must be preceded by a warrant issued upon probable cause or be subject to a recognized exception to the warrant requirement. The state argues that, although a dog-sniff search may be a search within the meaning of Article I, section 9,

> "[g]iven that a dog sniff is a relatively minimal intrusion upon privacy and is a valuable surveillance technique for the police, this court should hold that a warrantless dog sniff search is lawful if based on a reasonable suspicion that the item or area to be searched contains evidence of a crime."

In support of that argument, the state relies on a previous decision of this court, *State v. Kosta*, 75 Or App 713, 708 P2d 365 (1985), *aff'd on other grounds* 304 Or 549, 748 P2d 72 (1987), in which the state contends "this court appeared to embrace" its proposed view of the meaning of Article I, section 9. It also relies on decisions from other jurisdictions and on the views of Professor Wayne LaFave. Judge Deits joins the state in each of those arguments.

■ ■ Article I, section 9, of the Oregon Constitution provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers and effects, against unreasonable search, or seizure; and no warrant shall issue but

upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Oregon Supreme Court has explained the requirements of that section in the following straightforward terms:

" 'Normally, in order for a search to be constitutionally permissible, the police must have a search warrant. * * *

" 'A warrantless search by the police is "reasonable" under Article I, section 9, when the search falls into one or another of the recognized exceptions to the warrant requirement.' "

*State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994) (quoting *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992) (citations omitted)). The analysis involves no examination of relative levels of intrusiveness, no balancing of governmental law enforcement and individual privacy interests. If a given action constitutes a search for evidence within the meaning of Article I, section 9, ordinarily, it must be preceded by a warrant supported by probable cause, and short of that, it must be supported by an applicable exception to the warrant requirement. Our research has uncovered no Oregon appellate decision recognizing a "dog-sniff search exception," which permits a search to proceed upon mere reasonable suspicion that evidence of a crime may be found, and none of the state's arguments persuade us that we should create such an exception.[1]

First, as to the *Kosta* decision, the state is mistaken when it suggests that we created such an exception in that

---

[1] Oregon courts have held that officers may "take reasonable steps" in the face of "immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). Similarly, we have held that a "true emergency," *i.e.*, the need "to render lifesaving assistance in an emergency situation," may justify entry into a defendant's premises. *State v. Follett*, 115 Or App 672, 679, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993). In both cases, however, the courts explained that the officers' actions must not be taken for the purpose of gathering evidence. In all cases involving searches for evidence of a crime, the courts have required either a warrant or compliance with an exception to the warrant requirement that requires probable cause. *See, e.g., State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) (search incident to arrest exception requires probable cause); *State v. Herrin*, 323 Or 188, 193 n 1, 915 P2d 953 (1996) (automobile exception requires probable cause); *State v. Nagel*, 320 Or at 31-33 (exigent circumstances exception requires probable cause).

case. In *Kosta*, which was decided more than a decade before *Juarez-Godinez*, we expressly refrained from holding that a dog sniff is a search. We held instead that, whatever a dog sniff is, it may be supported by reasonable suspicion. That could mean either of two things: (1) that a dog sniff is not a search and therefore may proceed on mere reasonable suspicion, or (2) that a dog sniff is a search but nevertheless may proceed upon mere reasonable suspicion. It bears emphasis that we did not explain which of those two rationales supported our decision in *Kosta*. The opinion flatly stated that "we need not decide this question." *Kosta*, 75 Or App at 719 n 10. It suggested that, on the one hand, a dog sniff might not be a search, because no physical penetration of the searched package was involved. *Id.* It then suggested that, on the other hand, it might be a search, because technological enhancements generally are regarded as searches. *Id.* Given that we expressly refrained from deciding the question, we do not now read *Kosta* as if we actually had decided it.

Second, concerning the trend of other state decisions, there can be no question that a majority of other state courts holding that such an invasion is a search have held that dog-sniff searches require mere reasonable suspicion, because of the limited nature of the intrusion involved. The question is whether those decisions, and the reasoning by which they are reached, comport with the analysis we are required to follow under the Oregon Constitution. We conclude that they either offer no analysis at all or cannot be squared with Oregon law.

*State v. Smith*, 38 Conn App 29, 658 A2d 156 (1995), illustrates the former category of cases. In that case, the Connecticut Court of Appeals expressly refrained from deciding whether a dog sniff is a search "since it is unnecessary to have a standard in this case any higher than a reasonable and articulable suspicion." 38 Conn App at 40, 658 A2d at 156. That is the sum and substance of the court's analysis, and we find nothing useful in its raw *ipse dixitism*.

*Commonwealth v. Johnston*, 515 Pa 454, 530 A2d 74 (1987), illustrates the latter category of cases. In that case, the Pennsylvania Supreme Court decided that a dog sniff of a storage locker was a search, but that the search did not

require probable cause under that state's constitution. Under Pennsylvania law, the court explained, its analysis of the issue

> "necessarily involves a balancing analysis * * * to determine whether this particular kind of search in these circumstances necessarily implicates the full-blown warrant requirements of most other police searches."

515 Pa at 464, 530 A2d at 79. The court held that, on balance, the compelling state interest in eradicating illegal drug trafficking outweighed the minimal intrusion involved in the dog-sniff search of the locker, and, therefore, probable cause was not required. 515 Pa at 465-66, 530 A2d at 79-80. In *People v. Dunn*, 77 NY2d 19, 563 NYS2d 388, 564 NE2d 1054 (1990), *cert den* 501 US 1219 (1991), the New York Court of Appeals similarly concluded that, although a dog sniff of a residence from an apartment hallway is a search, it did not require probable cause,

> "[g]iven the uniquely discriminate and nonintrusive nature of such an investigative device, as well as its significant utility to law enforcement authorities."

77 NY2d at 26, 563 NYS2d at 392, 564 NE2d at 1058.

■    The problem with those cases is that they rely on an analysis that is foreign to that which must be applied under the Oregon Constitution. They expressly rely on a balancing of the government's interests in combating crime against the extent to which an individual's reasonable expectation of privacy is invaded. Article I, section 9, however, does not impose the warrant and probable cause requirement on the basis of a "reasonable expectation of privacy." Thus, the cases from other jurisdictions are not helpful to us, because they are reasoned on the basis of balancing factors that simply are not recognized under Oregon law.

The Supreme Court's opinion in *State v. Campbell*, 306 Or 157, 759 P2d 1040 (1988), is especially instructive. In that case, the court addressed whether the use of a radio transmitter to track the movements of a car is a search that requires a warrant or exigent circumstances and probable cause. The court framed the issue in the following terms:

"A search or seizure to obtain evidence of a crime is unconstitutional if no warrant authorized the search or seizure and there is no exigency that would obviate the need for a warrant. In this case, there was neither a warrant nor any exigency that would have obviated the need for a warrant. If the attachment or monitoring of the transmitter was a search or seizure, the motion to suppress was properly allowed."

*Id.* at 163 (citations omitted). The state urged the court to analyze the issue by inquiring whether its use of the transmitter interfered with a "reasonable expectation of privacy" of the defendant. The court expressly rejected that analysis:

"This court has expressed doubts about the wisdom of defining Article I, section 9, searches in terms of 'reasonable expectations of privacy.' Because the phrase continues to appear so often in arguments, we here expressly reject it for defining searches under Article I, section 9. The phrase becomes a formula for expressing a conclusion rather than a starting point for analysis * * *. Moreover, the privacy protected by Article I, section 9, is not the privacy that one reasonably *expects* but the privacy to which one has a *right.*"

*Id.* at 164 (emphasis in original; citations omitted). The court went on to hold that the use of a radio transmitter did invade the defendant's right to privacy. It then concluded, without any further analysis of the *extent* of the invasion of the defendant's privacy rights, that evidence obtained from the use of the transmitter must be suppressed unless supported by a warrant based on probable cause or an exception to the warrant requirement. *Id.* at 172-73.

Judge Deits says that we exaggerate the importance of this distinction, because, in the cases from other jurisdictions, "once it was determined that what took place was a search, 'reasonable expectation of privacy' was no longer a predominant consideration." 148 Or App at 251. According to Judge Deits, the predominant consideration was in those cases, and should be for us, the minimal nature of the intrusion involved in dog-sniff searches. We are unpersuaded. To begin with, the decisions from other jurisdictions are, in fact, predicated on the sort of balancing test that we have

described. Indeed, it is the individual's reasonable expectation of privacy that is the interest against which the minimally intrusive nature of the search is balanced. As the court explained in *Johnston*:

"Thus, while we are unwilling to balance the privacy expectations of the individual against the law enforcement interests of government for the purpose of determining whether there was a search, we find the balancing inquiry appropriate to determine whether this particular kind of search in these circumstances necessarily implicates the fullblown warrant requirements of most other police searches."

515 Pa at 464, 530 A2d at 79. Thus, the analysis employed by those decisions involves comparing the nature of the search with apples, while any balancing that we might employ would involve comparing the nature of the search with oranges. The cases are therefore of no assistance to us.

Aside from that, we do not find the reasoning of the cases persuasive. In none that we have reviewed is there an explanation *why* the minimally intrusive nature of dog-sniff searches makes requiring less than probable cause reasonable. Judge Deits similarly reasons simply that:

"The dog-sniff search at issue here involved a trained narcotics dog walking down an aisle of an area that was open, generally, to the public. The dog 'alerted' to the presence of narcotics when it reached the door of defendant's storage unit. The dog did not go in the unit or in any other way disturb the unit or its contents. It did not expose defendant's legal activities. The dog-sniff search involved here was a minimal intrusion to defendant's privacy rights. I would hold that because of the limited nature of the intrusion under these specific circumstances, the dog-sniff search, if supported by reasonable suspicion, is reasonable under Article I, section 9."

148 Or App at 253. That analysis consists of merely stating a conclusion about the very matter at issue.

In that regard, we also find troubling the implications of the foregoing reasoning: As long as an officer does not go to the trouble of obtaining a warrant, reasonable suspicion suffices, but if the officer obtains a warrant, probable cause

must be established. The upshot is that law enforcement officers would have every incentive simply not to obtain a warrant. The United States Supreme Court noted a similar problem when it addressed a proposed reasonable suspicion standard for plain-view searches in *Arizona v. Hicks*, 480 US 321, 327, 94 L Ed 2d 347, 107 S Ct 1149 (1987), making the following observation:

> "No reason is apparent why an object should routinely be seizable on lesser grounds [on the basis of plain view] than would have been needed to obtain a warrant for the same object if it had been known to be on the premises."

Similarly in this case, no reason is apparent to us why evidence of drugs should be seizable on lesser grounds without a warrant than would be needed to obtain a warrant to search for the same evidence.

Finally, with respect to Professor LaFave's analysis, we acknowledge that he proposes that, theoretically, it may be possible to distinguish dog sniffs from other kinds of searches:

> "Assuming now that *some* uses of these dogs constitutes a search, it does not inevitably follow that they should be encumbered by the restrictions ordinarily applicable to other types of searches which are clearly more intrusive in character. While it has sometimes been asserted that if the use of trained dogs is a search then such surveillance is unconstitutional if 'conducted in absence of a warrant supported by probable cause,' the Fourth Amendment does not demand such a result. In *Terry v. Ohio*, [392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968),] the Court upheld a limited warrantless search made upon less than full probable cause 'by balancing the need to search [or seize] against the invasion which the search [or seizure] entails,' and thus a similar approach might be taken as to the kind of search here under discussion. Although there are sound reasons for not employing too generously 'a graduated model of the fourth amendment,' the notion that searches by use of dogs trained to detect narcotics or explosives is a lesser intrusion subject to lesser Fourth Amendment restrictions is sound. This is because this particular investigative technique is a distinct police practice which quite obviously is much less intrusive than other searches."

Wayne R. LaFave, 1 *Search and Seizure* § 2.2(f), 461 (3d ed 1996) (emphasis in original; footnotes omitted). Upon more careful reading, however, we conclude that his suggestion offers little support for the state's proposed adoption of such a distinction under Oregon law.

To begin with, LaFave himself concedes that his proposed " 'graduated model of the fourth amendment' " is problematic, and should not be employed "too generously." *Id.* He notes that the proposal has been criticized as having the potential to convert search and seizure law "into one immense Rorschach blot." *Id.* (quoting Anthony G. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn L Rev 349, 393 (1974)). He also notes that it is unlikely that the United States Supreme Court would adopt it, because the Court already has concluded that searches cannot be analyzed in terms of degrees of intrusiveness. *Id.* Finally, LaFave's proposal is predicated on the same balancing of the state's interest against an individual's reasonable expectation of privacy, which, as we have noted, is inappropriate under Oregon law. Thus, LaFave is a weak reed on which to lean so significant a change to the constitutional law of this state.

We conclude that a search for evidence by means of a trained narcotics dog must be supported by a warrant issued upon probable cause or by circumstances amounting to an exception to the warrant requirement. In this case, there is no question that a warrant was not obtained prior to the dog sniff. Similarly, there is no suggestion that the police had probable cause to believe that evidence of a crime would be found in defendant's locker before the dog "alerted" to the existence of drugs at that location. It necessarily follows that the dog-sniff search was unconstitutional and that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

**WARREN, J.,** concurring.

I agree with Judge Edmonds' dissent that a dog sniff is not a search and that *State v. Juarez-Godinez*, 135 Or App 591, 604-05, 900 P2d 1044 (1995), *aff'd* 326 Or 1 (1997), holding to the contrary, in which I joined, was wrongly

decided. Because, however, we are at this point bound by our holding that a dog sniff does constitute a search, I agree with the majority that there is no principled basis to make a dog-sniff exception to the probable cause requirement.

**DEITS, J.,** dissenting.

The majority concludes that, because a dog sniff is a search under Article I, section 9, of the Oregon Constitution, we have no choice but to require probable cause and exigent circumstances before a dog sniff may be conducted without a warrant. I disagree; first, because we have previously decided this question contrarily and, second, because the majority's understanding of our assessment of the reasonableness of a dog-sniff search under Article I, section 9, is unnecessarily restrictive.

As the majority correctly explains, we have held that use of a trained narcotics detection dog's sense of smell to detect the presence of narcotics is a search within the meaning of Article I, section 9, of the Oregon Constitution. *State v. Juarez-Godinez*, 135 Or App 591, 604-05, 900 P2d 1044 (1995), *aff'd* 326 Or 1 (1997). The majority is also correct that, in *Juarez-Godinez*, we left open the question of whether a dog-sniff search could be justified on less than probable cause.

Contrary to the majority's assertions, however, in *State v. Kosta*, 75 Or App 713, 708 P2d 365 (1985), *aff'd on other grounds* 304 Or 549, 748 P2d 72 (1987), we did conclude that a dog sniff supported by reasonable suspicion did *not* violate Article I, section 9. In *Kosta*, we considered whether the evidence obtained from a narcotics detection dog's sniff of a particular package, which officers reasonably suspected contained drugs, should be suppressed because it was obtained in violation of Article I, section 9. We reserved the question of whether the dog sniff was a "search," for purposes of Article I, section 9, because we did not believe that the resolution of that question was necessary to decide the case. However, we clearly concluded that, despite the fact that there was not probable cause, because the dog sniff was based on reasonable suspicion and was limited in its intensity, it was *not* an

unreasonable search under Article I, section 9, and the evidence obtained from the dog sniff need not be suppressed. We explained:

> "We note, first, that this is not a case where the police arbitrarily exposed the dog to luggage and packages not reasonably suspected to contain contraband. We also note that the dog sniff could not reveal all of the contents of the package, as would an x-ray machine or the opening of the package. The further investigation was limited in intensity; it was also limited in scope to the presence of narcotics in the package in question, the suspected presence of which was the justification for its detention. Under these limited circumstances, and accepting their analogy to the stop statute, we hold that the intensity and scope of the 'further investigation,' like that of the reasonable inquiry permitted under ORS 131.615(3) following a valid stop, *does not constitute an unreasonable search under Article I, section 9.*" *Id.* at 719 (footnote omitted; emphasis supplied).

The Supreme Court subsequently affirmed *Kosta* on different grounds, holding that "there is no basis for defendant to assert a possessory or ownership interest in the package during transit." *State v. Kosta*, 304 Or 549, 554, 748 P2d 72 (1987). In so holding, the court emphasized that it expressed no opinion as to "[t]he extent to which Oregon law authorizes and the Oregon Constitution limits warrantless detentions of property without probable cause and exposure of packages or containers containing suspected contraband to trained narcotics detection dogs." *Id.* at n 3.

Our decision in *Kosta*, a decision, incidentally, of a unanimous full court, is entitled to at least some deference and we should not abandon it unless we are persuaded that that disposition was wrong. *Accord O'Brien v. State of Oregon*, 104 Or App 1, 6, 799 P2d 171 (1991), *rev dismissed* 312 Or 672, 826 P2d 633 (1992) (court will not overrule precedent "simply because, in the abstract, either answer might be logically supportable if we were writing on a clean slate"). I am not persuaded that it is wrong.

As the majority acknowledges, a substantial majority of state courts that have held that a dog sniff is a search[1]

---

[1] Many states have come to the same conclusion that the Supreme Court came to in *United States v. Place*, 462 US 696, 103 S Ct 2637, 77 L Ed 2d 110 (1983): that

have also concluded that a dog-sniff search may be upheld based on a standard less than probable cause; namely a reasonable and articulable suspicion that the object or place to be searched contains contraband. 148 Or App 241.[2] These decisions are well reasoned and sensible and generally have been based on the fact that dog sniffs are a distinct investigative technique which are quite limited in the information that they can obtain and on the fact that this unique type of search is simply less intrusive. Professor LaFave explains the rationale underlying these decisions:

"Assuming now that *some* use of these dogs constitutes a search, it does not inevitably follow that they should be encumbered by the restrictions ordinarily applicable to other types of searches which are clearly more intrusive in character. While it has sometimes been asserted that if the use of trained dogs is a search then such surveillance is unconstitutional if 'conducted in absence of a warrant supported by probable cause,' the Fourth Amendment does not demand such a result. In *Terry v. Ohio*, the Court upheld a limited warrantless search made upon less than full probable cause 'by balancing the need to search [or seize] against the invasion which the search [or seizure] entails,' and thus a similar approach might be taken as to the kind of search here under discussion. Although there are some reasons for not employing too generously 'a graduated model of the fourth amendment,' *the notion that searches by use of dogs trained to detect narcotics or explosives is a lesser intrusion subject to lesser Fourth Amendment restrictions is*

---

using a trained narcotics dog to detect the odor of marijuana is not a search and, accordingly, *no* justification is necessary. *E.g., State v. Montford*, 457 SE2d 229 (Ga App 1995); *Seeley v. State*, 669 So2d 209 (Ala Crim App 1995); *State v. Waldroup*, 654 NE2d 390 (Ohio App 12 Dist 1995).

[2] *See, e.g., McGahan v. State*, 807 P2d 506 (Alaska App 1991) (dog sniff of warehouse exterior accessible to public was search requiring reasonable suspicion); *People v. May*, 886 P2d 280, 282 (Colo 1994) (dog sniff search must be based on reasonable suspicion to avoid violating state constitution); *State v. Smith*, 38 Conn App 29, 658 A2d 156, 162 (1995) (assuming without deciding that dog sniff of car was a search, action warranted by reasonable and articulable suspicion); *State v. Pellicci*, 133 NH 523, 580 A2d 710 (1990) (dog sniff of car's exterior was search requiring reasonable suspicion); *People v. Dunn*, 77 NY2d 19, 563 NYS2d 388, 564 NE2d 1054 (1990), *cert den sub nom Dunn v. New York*, 501 US 1219 (1991) (dog sniff of residence from apartment hallway was search requiring reasonable suspicion); *Commonwealth v. Johnston*, 515 Pa 454, 530 A2d 74 (1987) (dog sniff of rented storage locker was search requiring reasonable and articulable suspicion). *But see Commonwealth v. Martin*, 534 Pa 136, 626 A2d 556 (1993) (full probable cause and warrant required for dog sniff of person).

*sound. This is because this particular investigative technique is a distinct police practice which quite obviously is much less intrusive than other searches."* Wayne R. LaFave, 2 *Search and Seizure* § 2.2(f) (3d ed 1996) (footnotes omitted; emphasis supplied).

The majority, however, rejects these holdings without even considering the rationale of the opinions because of its view that the decisions are based on a "reasonable expectation of privacy" analysis, which is not the approach that we use under Article I, section 9, and, therefore, at least in the majority's view, is totally irrelevant to our analysis. As the majority explains:

"[The other states] expressly rely on a balancing of the government's interests in combating crime against the extent to which an individual's reasonable expectation of privacy is invaded. Article I, section 9, however, does not impose the warrant and probable cause requirement on the basis of a 'reasonable expectation of privacy.'" 148 Or App 242.

The majority is correct that most states do use a "reasonable expectation of privacy" analysis in contrast to Oregon's approach of considering the privacy "that a person has a right to expect." *State v. Campbell*, 306 Or 157, 759 P2d 1040 (1988). However, for the reasons that I will discuss, the fact that we use a different standard in assessing the nature of the privacy interest invaded by police action does not render meaningless the reasoning of the decisions of other states and of commentators on this question. Under our case law, we are not precluded from deciding that, in the limited and unique circumstances of a dog sniff of property, a search based on less than probable cause could be found to be reasonable under Article I, section 9.

As the Supreme Court in *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994), emphasized, the question of whether Article I, section 9, has been violated involves a two-part inquiry. The first question is whether a *search* has occurred. Second, if the action in question is determined to be a search, the issue is whether the search was reasonable. The inquiry concerning the nature of the interest invaded, *i.e.*, reasonable expectation of privacy, or in Oregon, the privacy a person has a right to expect, takes place as a part of the first inquiry,

whether there was a search. In other jurisdictions that have held that a dog-sniff search may be justified based on less than probable cause, the "reasonable expectation of privacy" standard or some similar analysis was used to determine whether a *search* occurred. *E.g., People v. Boylan*, 854 P2d 807, 810-11 (Colo 1993); *State v. Pellicci*, 580 A2d 710, 717 (NH 1990);[3] *People v. Dunn*, 564 NE2d 1054 1058 (NY 1990); *Com. v. Johnston*, 530 A2d 74, 79 (Pa 1987); *Pooley v. State*, 705 P2d 1293, 1311 (Alaska App 1985). In these decisions, however, once it was determined that what took place was a search, "reasonable expectation of privacy" was no longer a predominant consideration. The question that the courts addressed after concluding that a search had occurred, was whether the search was *unreasonable* under their state constitutions. *Id.* The court in *Johnston* accurately explains this approach:

> "Thus, while we are unwilling to balance the privacy expectations of the individual against the law enforcement interests of the government for the purpose of determining whether there was a search, we find the balancing inquiry appropriate to determine whether this particular kind of search in these circumstances necessarily implicates the fullblown warrant requirements of most other police searches." 515 Pa at 464, 530 A2d at 79.

Accordingly, the fact that these other jurisdictions used a "reasonable expectation of privacy" standard in determining whether a search has occurred does not justify summarily rejecting their analyses. Whether or not there was a search is not the question here. There is no dispute that the dog sniff was a search.

The pertinent question here is whether a dog sniff of property, based on less than probable cause, could be found to be reasonable under Article I, section 9. The majority says no, because, in order for such a search to be considered reasonable, it must come within one of the recognized exceptions to the warrant requirement. It concludes that no such exception

---

[3] The New Hampshire court has "neither adopted nor rejected the reasonable expectation of privacy analysis for purposes of determining what constitutes an invasion of protected interests" under its state constitution. *Pellicci*, 580 A2d at 717.

has been recognized in Oregon and that nothing short of probable cause and exigent circumstances will meet the test of reasonableness under Article I, section 9. It further concludes that we are precluded from recognizing such an exception because Article I, section 9, does not allow any consideration of "relative levels of intrusiveness [or] balancing of governmental law enforcement and individual interests." 148 Or App at 240.

I agree that, except for our decision in *Kosta*, a dog-sniff exception to the warrant requirement has not been recognized in Oregon. However, I do not agree that Article I, section 9, precludes *any* consideration of the degree of intrusiveness of a search or the balancing of governmental interests and individual interests in assessing reasonableness under Article I, section 9. I am not aware of any case that so holds. Justice Gillette, in his concurrence in *State v. Nagel, id.* at 43, seems to believe that this is at least an open question:

> "The majority has not considered, and does not today decide, whether, *inter alia*, (1) searches of the kind involved here may be carried out with less than probable cause, because of the minimal privacy interest involved or the limited nature of the intrusion[.]"

In addition, this court has, in fact, concluded that a search that is based on less than probable cause is not unreasonable and we have balanced the government's interest against an individual's privacy interest in evaluating the reasonableness of the search. For example, in *State ex rel Juv. Dept. v. Orozco*, 129 Or App 148, 152, 878 P2d 432 (1994), *rev den* 326 Or 58 (1997), we concluded that extracting blood for DNA purposes is a search that may be conducted based on less than probable cause.[4] *See also State v. Willhite*, 110 Or App 567, 824 P2d 419 (1992) (in which we balanced the government's interest in inventory searches against a person's privacy interest in the contents of their seized vehicle).

---

[4] The concurrence would have used a balancing test, comparing the analysis to that used in other prisoner search cases. *Orozco*, 129 Or App at 156 (Rossman, P. J., concurring, joined by Edmonds and De Muniz, JJ.).

The majority relies strongly on the Supreme Court's holding in *State v. Campbell*, 306 Or 157, 759 P2d 1040 (1988), for the proposition that we do not consider the extent of the intrusiveness of a search in deciding if it is reasonable. In *Campbell*, however, the issue presented was whether the use of a radio transmitter was a search. It does not appear to have been argued that the limited intrusiveness of the radio made the search "reasonable." That is not surprising given the highly intrusive nature of such devices. *See Campbell*, 306 Or at 172 (calling the use of a transmitter to track a car a "staggering limitation upon personal freedom" and making other references to the high degree of intrusiveness involved in the use of the radio transmitter); *see also* LaFave, 2 *Search and Seizure* § 2.7(e) (rejecting the contention that an electronic monitor is minimally intrusive). In my view, there is no inconsistency between the Supreme Court's holding in *Campbell* and a holding that it is permissible to consider the minimal intrusiveness of a search in deciding if a search is unreasonable under Article I, section 9.

The dog-sniff search at issue here involved a trained narcotics dog walking down an aisle of an area that was open, generally, to the public. The dog "alerted" to the presence of narcotics when it reached the door of defendant's storage unit. The dog did not go in the unit or in any other way disturb the unit or its contents. It did not expose defendant's legal activities. The dog-sniff search involved here was a minimal intrusion to defendant's privacy rights. I would hold that because of the limited nature of the intrusion under these specific circumstances, the dog-sniff search, if supported by reasonable suspicion, is reasonable under Article I, section 9.[5]

I would also conclude that a reasonable suspicion standard was satisfied in this case. Reasonable suspicion in the context of a "stop" under ORS 131.615 requires that an

---

[5] I express no view as to the lawfulness of dog-sniff searches in other circumstances, including dog-sniff searches of persons. *See, e.g., United States v. Thomas*, 757 F2d 1359, 1367 (2d Cir), *cert den* 474 US 819 (1985) (dog sniff outside apartment door requires probable cause); *Commonwealth v. Martin*, 534 Pa 136, 626 A2d 556 (Pa 1993) (requiring probable cause and warrant for dog sniff of person); *compare People v. Dunn*, 564 NE2d at 1058 (dog sniff outside apartment requires reasonable suspicion).

officer have a reasonable suspicion that the person has engaged in illegal activity. *State v. Aquilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996). In that case, we explained that:

> "Reasonable suspicion is defined by ORS 131.615 as 'a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts.' The standard is an 'objective test of observable facts' and requires the officer 'to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime.'" *Id.* at 182 (citations omitted).

That test appears to be equally appropriate in these circumstances. *See State v. Kennedy*, 290 Or 493, 497, 624 P2d 99 (1981) ("[A]nalysis of defendant's rights under ORS 131.605-131.625 is substantially the same as analysis of his rights under the search and seizure provisions of the Oregon and Federal constitutions.").

Whether the facts are sufficient to meet the reasonable suspicion standard is a question of law to be determined by this court. *State v. Ehly*, 317 Or 66, 74, 854 P2d 421 (1993) (legality of search dependant largely on facts). I would conclude that the evidence here supports the conclusion that the officers had a reasonable and articulable suspicion that the storage locker contained contraband. The police were aware that defendant was growing marijuana in the Brookings area and had used a storage unit for storing the marijuana. They also knew that defendant had just harvested his marijuana and that he still had the storage unit in the Brookings area. Plaster knew that a search warrant had been executed at defendant's home in Klamath Falls resulting in the discovery of several pounds of marijuana. This evidence constitutes specific and articulable facts that gave rise to a reasonable suspicion that defendant was storing contraband within the storage unit. I would hold that the dog-sniff search was reasonable under the Oregon Constitution and that the trial court did not err in denying the motion to suppress on that basis.

Defendant also argues that the evidence should be suppressed because, during the time that Nitro was sniffing defendant's storage unit, the officers were not where they

had a legal right to be and, thus, the search was illegal. The trial court concluded, however, that the officers were lawfully on the property. The court found:

> "The complex has over a hundred units in several different buildings with roadway areas between the buildings. The complex is fenced with a gate for access. The gate is open during business hours. The general public has access to the complex and does so [sic] during events such as 'garage sales' held by individuals who rent units. The Brookings Police Department rents a unit at the facility and both Plaster and Gardiner use the unit for the storage of work[-]related items."

The trial court's findings are supported by the evidence in the record and, accordingly, we are bound by them. *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). I conclude that these findings support the conclusion that the officers were lawfully on the premises. *See State v. Poppe*, 131 Or App 14, 22, 883 P2d 905, *rev den* 320 Or 492 (1994) (where the officer's conduct in gaining access to the premises is not objectionable, no privacy interest is threatened). I would hold that the trial court properly denied defendant's motion to suppress evidence gained from Nitro's sniff search.

Defendant also moved to suppress evidence obtained after the officers padlocked the storage unit. The state agrees that this was a seizure, but contends that it was not unlawful. It argues alternatively that, even assuming that the seizure of the storage unit was unlawful, the evidence obtained pursuant to the later search warrant should not be suppressed, because there was no causal connection between the unlawful conduct and the discovery of the evidence. In other words, the officers did not exploit any information obtained through their unlawful conduct to obtain the evidence. Because I agree with the state's alternative argument, I do not address the lawfulness of seizure.

Defendant contends that the court's decision in *State v. Hansen*, 295 Or 78, 664 P2d 1095 (1983), defeats the state's argument that where there is no causal connection between the police action and discovery of the evidence, the evidence should not be suppressed. Defendant bases that contention on his characterization of the disputed evidence as primary,

not derivative, evidence. The state does not take a position on whether the evidence here was primary or derivative; instead it argues that the source of the authority to search the locker was independent of the seizure and because of that the evidence was not obtained in violation of Article I, section 9, of the Oregon Constitution.

Evidence obtained in violation of a defendant's rights under Article I, section 9, is subject to suppression. *State v. Rodriguez,* 317 Or 27, 854 P2d 399 (1993); *State v. Davis,* 313 Or 246, 253, 834 P2d 1008 (1992). Whether suppression is required depends on the nature of the connection between the unlawful police conduct and the evidence sought to be suppressed. *Rodriguez,* 317 Or at 39. As the court in *Rodriguez* explained:

> "[W]here the evidence would have been obtained even in the absence of the unlawful police conduct—*i.e.,* where there is no causal connection between the unlawful conduct and the discovery of the evidence—the mere fact that the evidence was obtained *after* that conduct will not require suppression." 317 Or at 39 (emphasis in original).

Thus, when evidence is obtained subsequent to unlawful police conduct, suppression may be required depending on the particular circumstances.

Although distinctions among them have been blurred somewhat, there are three general theories that have been used to analyze whether the connection between unlawful police conduct and evidence obtained after that conduct is sufficient to require suppression. Under what is called an "attenuation" theory, the trial court may admit evidence where the connection between the illegality and the discovery of the evidence is so distant, or attenuated, that it dissipates the "taint" of the illegality.[6] LaFave, 11 *Search and Seizure* § 11.4(a); *State v. Hacker,* 51 Or App 743, 627 P2d 11

---

[6] The continued viability of this theory in Oregon is questionable. Under this theory, it is accepted that the evidence resulted from the illegality. However, the rationale supporting the theory is that the causal connection is so distant that the officers could not have foreseen the evidence coming to light because of their illegality. Because of that, there is no deterrent effect by suppressing such evidence and therefore, no need to suppress. However, Oregon courts have concluded that deterrence is not the primary basis for excluding evidence, but rather is only a "desired consequence." *State v. McMurphy,* 291 Or 782, 785, 635 P2d 372 (1981). Thus, it is questionable whether use of this theory alone is sufficient to withstand a suppression motion.

(1981). Under the "inevitable discovery" doctrine, evidence may be admitted where the state meets its burden of proof to show that the evidence would eventually have been found irrespective of the illegality. Under an "independent source" theory, the court may admit certain evidence where the state can prove that it obtained knowledge of the source of the evidence independent of the illegality. The difference between the inevitable discovery theory and the independent source theory is that, under the independent source theory, the police "did in fact acquire certain evidence by reliance upon an untainted source" whereas under the inevitable discovery theory, the police must show that they could have and would have acquired the evidence using untainted sources, but they did not, in fact, actually employ those untainted sources. LaFave, 11 *Search and Seizure* § 11.4(a).

The trial court here seems to have based its decision on an independent source theory, stating that the warrant was obtained "independent of the action of the second lock being put in place and no one tried to remove any property during the time the police were obtaining the warrant." That also appears to be the state's theory on appeal. As discussed above, defendant's position is that, under the court's decision in *Hansen*, none of the above exceptions to suppression are applicable here because the evidence sought to be suppressed was primary evidence.

Defendant is correct that the court in *Hansen* did draw a distinction between primary and derivative evidence. In that case, the officers illegally seized a home by "securing" it. 295 Or at 94. They remained in the home until a search warrant was obtained. No evidence that the officers observed upon entry into the home was used in the affidavit submitted in support of the warrant. Despite that fact, the court concluded that the evidence discovered following execution of the warrant must be suppressed. *Id.* at 97. In reaching that conclusion, the court rejected an independent source argument because the evidence at issue was primary evidence, the very evidence the officers were seeking when they committed the illegality. *Id.* The court stated that this was not a case of the fruit of the poisonous tree, but rather was the poisonous tree itself. *Id.* at 96. The very purpose of the unlawful police conduct was to arrest and convict the defendant for

possession of marijuana and securing the home and the defendant within it to prevent the removal of the marijuana from the home accomplished that goal. *Id.* at 97.

In our decision in *State v. Nicholson*, 89 Or App 306, 314, 748 P2d 1028, *rev den* 305 Or 672 (1988), we held, relying on *Hansen*, that a trial court properly suppressed all evidence, primary and derivative, where the evidence sought to be admitted was "evidence furthering the same purpose that motivated the unlawful seizure[.]" In *Nicholson*, a motel maid called the police because she found guns and what she thought were drugs in a jacket that the defendant had left behind at the motel. 89 Or App at 308. When the defendant returned, he saw the officers and ran. The officers pursued and arrested the defendant. They then noticed an unoccupied car in the parking lot that was not there before the defendant had arrived. The officers could smell the odor of methamphetamine coming from the car. The car was then towed to a secure area at the police department. *Id.* It was searched a few days later without a warrant. *Id.* at 309. In the course of searching the car, a map was discovered. The defendant moved to suppress the map. The court concluded that the purpose of securing the car was to convict the defendant of possession of methamphetamine and that the map was evidence used to further that goal. *Id.* at 314. Thus, based on *Hansen*, the court suppressed the map. *Id.*

Subsequent to *Hansen* and *Nicholson*, however, the Supreme Court appears to have abandoned the primary/derivative distinction. In *State v. Sargent*, 323 Or 455, 918 P2d 819 (1996), the officers "secured" a home while waiting for other officers to obtain a warrant. 323 Or at 459. The police had begun watching the defendant's apartment following complaints about drug dealing. *Id.* at 458. After determining that there was an outstanding warrant for the arrest of the defendant's wife and that she was in the apartment, the officers knocked on the defendant's door with the intention of arresting his wife. The officers were allowed into the apartment. *Id.* As they entered, the defendant's wife ran down the hallway away from them. The officers followed her. While in the apartment, the officers saw the defendant and two other men in the apartment. They also saw various accouterments to drug use. They found the defendant's wife

in a bedroom closet. On a shelf in the closet, the officers observed three large rolls of money. They allowed the two other men to go, but searched the defendant and found about $2,600 on his person. The defendant was released, and his wife was arrested and taken to jail. Some of the officers left and others were "posted" inside the apartment to " 'secure' it while a search warrant was being obtained." *Id.* at 459. The affidavit for the warrant included information about the money and the drug paraphernalia that the officers saw in the house. About six hours later, the officers obtained and executed a search warrant. They seized all of the above-mentioned evidence and ten packets of heroin, as well as other evidence, and arrested the defendant. *Id.* at 460.

In *Sargent*, the court held that the trial court erred when it suppressed all of the evidence found pursuant to the search warrant. *Id.* at 463. The court distinguished *Hansen* on the ground that *Hansen* involved an *unlawful* entry, whereas the officers in *Sargent* had entered the apartment lawfully to execute the arrest warrant on the defendant's wife. *Id.* at 462. The court also explained that, unlike *Hansen*, no one in *Sargent* was unlawfully arrested or detained. After making this distinction, however, the court identified what appears to be an analogous illegality in *Sargent*; namely that the officers unlawfully remained in the apartment beyond the time necessary to execute the warrant. The court then went on to hold that, even in view of this illegality, the evidence should not have been suppressed:

> "However, this potentially trespassory conduct did not result in, produce, or lead to discovery of any item of evidence mentioned in the trial court's written suppression order. As a matter of logic, then, there is no item of evidence from the search warrant tainted by the potentially trespassory conduct and, therefore, no item to suppress. The Oregon rationale for the exclusionary rule does not require suppression here. Any invasion of privacy that occurred after the arrest warrant was executed is not connected to discovery or availability of any evidence seized during the later search pursuant to the search warrant. Thus, no privacy right that can be vindicated by suppression can be traced to any item seized under the search warrant. There is nothing seized under it to suppress. Put in terms of this court's characterization in *State v. Davis*, 295 Or 227, 234,

666 P2d 802 (1983), there are no 'fruits of [governmental] transgression' to suppress." *Id.* at 462-63 (footnotes omitted; brackets in original).

In *Sargent,* the evidence obtained after the unlawful occupation was evidence furthering the same purpose that motivated the unlawful occupation; in other words, it was primary evidence. However, the court did not consider that determinative. Accordingly, in considering whether evidence must be suppressed based on an independent source theory, it does not appear to be dispositive whether the evidence at issue is primary or derivative. Rather, the proper inquiry is that set forth in *Rodriguez* as discussed above, *i.e.*, the nature of the connection between the unlawful conduct and the discovery of the incriminating evidence. *Sargent,* 323 Or at 462-63.

In this case, the officers did not use any evidence from the seizure of the storage unit to obtain the warrant. As in *Sargent,* the officers had all the information that they needed to secure the search warrant prior to securing the premises by padlocking the unit. They used nothing additional from the seizure to obtain the search warrant and, ultimately, the evidence. Thus, "there are no 'fruits of [governmental] transgression' to suppress." *Sargent,* 323 Or at 463 (brackets in original), *citing Davis,* 295 Or at 234. Accordingly, I would conclude that even if the padlocking of the storage unit was an unlawful seizure, the trial court properly denied defendant's motion to suppress evidence obtained after the seizure. For all the above reasons, I would affirm the trial court and, accordingly, I dissent.

**EDMONDS, J.,** dissenting.

For the reasons stated in my dissenting opinion in *State v. Juarez-Godinez,* 135 Or App 591, 900 P2d 1044 (1995), *aff'd* 326 Or 1 (1997), the use of Nitro to determine the presence of controlled substances in unit 125 was not a search under Article I, section 9, of the Oregon Constitution. A "search" under section 9 occurs when a person's privacy or possessory interest is invaded. *State v. Owens,* 302 Or 196, 729 P2d 524 (1986). Defendant's possessory interest in unit 125 was never invaded because at the time of the sniff, Nitro was in an area where defendant had no possessory interest.

Also, defendant's privacy interest in his contents in unit 125 was not invaded by the dog sniff. The odor which the dog smelled had escaped from the confines of unit 125 and was in an area in which defendant held no privacy interest. The dog was in a place where he had a right to be, insofar as defendant was concerned, and "alerted" to what was there to smell. Moreover, the use of a dog under these circumstances did not violate any social or legal norm, unlike the use of a transmitter attached to a vehicle to track its movement, such as occurred in *State v. Campbell*, 306 Or 157, 759 P2d 1040 (1988). In sum, there is no right to privacy in those things that announce their presence and are exposed to public perception, whether that perception is by sight, sound or smell. *State v. Slowikowski*, 307 Or 19, 761 P2d 1315 (1988); *State v. Louis*, 296 Or 57, 672 P2d 708 (1983). The majority is wrong when it holds otherwise. For this reason, I dissent.

Riggs and De Muniz, JJ., join in this dissent.

**DE MUNIZ, J.,** dissenting.

I agree with Judge Warren that the majority is correct that there is no principled basis to make an exception to the warrant and probable cause requirements for "dog-sniff" searches. I also agree with him that we were wrong in holding that "dog-sniffs" are searches under Article I, section 9, in *State v. Juarez-Godinez*, 135 Or App 591, 900 P2d 1044 (1995), *aff'd* 326 Or 1 (1997). However, unlike Judge Warren, I do not consider that we are bound by *Juarez-Godinez*. I would overrule the opinion insofar as it holds that all "dog sniffs" are searches within the meaning of Article I, section 9.

I also joined with the majority in the *Juarez-Godinez* holding but am now persuaded that Judge Edmonds correctly applied the Supreme Court's analysis of Article I, section 9, in concluding there that the dog sniff of odors emanating onto the freeway did not involve any intrusion into privacy interests so as to constitute a search. Under that analysis, Judge Edmonds is also correct here that Nitro was in a place where he had a right to be and that the dog sniff

of odors emanating from unit 125 did not invade any interest protected by Article I, section 9.